## Bennett v. Consolidated Realty Company.

(Decided December 11, 1928.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

1. Covenants.—Use of lots by patrons of roadhouse as a parking place for automobiles held a use for business purposes, in violation of restrictive covenant in deed conveying lots, in that the parking place was an incident to the roadhouse, without which it might not have been successfully operated under the circumstances.

2. Injunction.—Though restrictive covenants in deeds are not to be construed to create restrictions beyond fair and natural meaning of words used, read in the light of circumstances under which they were used, they will be enforced according to their fair and natural meaning, in the absence of fraud or mutual mistake.

3. Evidence.—Where covenant in deed conveying lots forbidding use for trade or business was unambiguous and expressed in ordinary words, testimony relative to oral agreement with agent that lots might be used as parking place for automobiles in connection with business of maintaining a roadhouse was inadmissible as contradicting or varying the plain meaning of a contract required to be in writing.

HUBBARD & HUBBARD for appellant.

DAVID R. CASTLEMAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Some years ago J. G. Bennett opened a restaurant and dance hall known as Inn Logola about one mile east

of the city limits of Louisville. After this the Consolidated Realty Company purchased a tract of land adjacent to his property, and opened a subdivision known as Wellington, cutting it up into lots. Bennett purchased from the company lot 1 and from its vendees lots 2 and 3. These three lots lay adjoining, and were separated from Bennett's property by an alley. Inn Logola was much attended by people coming in cars, and, even before, Bennett purchased lot 1, his patrons were using for parking purposes this ground when necessary. His original lot contained only space enough for 10 or 12 cars. After Bennett acquired lots 1, 2 and 3, he covered the rear of the lots with cinders, and his patrons used it for parking purposes; often as many as 100 cars were there. He had dances in the evening, and these lasted sometimes until 2 or 3 o'clock in the morning. Bennett charged nothing for the parking. He did no business on these lots, except to allow them to be used by his patrons. The only charges he made were for what was received in the house. The deed to him for the lots contained this clause:

> "No trade or business whatever shall be permitted or maintained on this property. This is not to include doctors or dentists who may maintain an office in their residence."

The company brought this suit against Bennett to enjoin him from using lots 1, 2 and 3 as a parking space for the automobiles of patrons of Inn Logola or for any other purpose incidental to or associated with the operation of the roadhouse. The issues were made up, proof was taken, and on final hearing the circuit court granted the injunction as prayed. Bennett appeals.

The use of the lots by Bennett's patrons was plainly a use for business purposes. It was necessary to have a parking place for these automobiles. The parking place was an incident to the roadhouse, without which the roadhouse could not have been successfully operated under the circumstances. Bennett was carrying on the business of operating the roadhouse; and, in providing parking places for his patrons, he was simply performing an incident of that business. While such provisions in deeds are not construed to create restrictions beyond the fair and natural meaning of the words used, read in the light of the circumstances under which they were used, they will be enforced according to their fair and

natural meaning, in the absence of fraud or mutual mistake. To hold that no trade or business was permitted on these lots would be to refuse to enforce the provision according to the plain meaning of the common words of everyday speech in which it is expressed; for such a use as Bennett was making of the property would be especially objectionable in a residential section, and the restriction was inserted to protect the subdivision for residential purposes.

Bennett insists that he was using lot 1 as a parking place when he bought it from appellee, and that, when he bought it, it was agreed between him and the agent of appellee, from whom he bought, that he might continue to so use it; that he bought it for this purpose; and that the agent sold it to him for his purpose. But the agent denies all this, and there is no pleading or proof that anything was left out of the written contract by fraud or mistake. The rule on the subject is thus well stated in 10 R. C. L.:

> "When the language employed in a contract has an ordinary meaning, or if the meaning is plain and unambiguous when read in connection with other provisions of the contract, extrinsic evidence as to its meaning is not admissible." Section 258, p. 1063.

> "It is a general rule that where the words of any written instrument are free from ambiguity in themselves, and where external circumstances do not create any doubts or difficulty as to the proper application of those words to claimants under the instrument, or the subject matter to which the instrument relates, such instrument is always to be construed according to the strict, plain, common meaning of the words themselves, and that in such case evidence dehors the instrument, for the purpose of explaining it according to any surmised or alleged intention of the parties to the instrument, is utterly inadmissible. In short, the words of an instrument, unambiguous in themselves, cannot be controlled by proof that the parties used them with a definite and limited meaning, for the purpose of that particular instrument. Section 265, p. 1070.

These rules have often been applied by this court. Marshall v. Dean, 4 J. J. Marsh. 583; Spurrier's Heirs v. Parker, 16 B. Mon. 274; Helton v. Asher, 135 Ky. 751,

123 S. W. 285; Conrad v. Smith, 203 Ky. 171, 261 S. W. 1103; National Bank v. Minary, 221 Ky. 798, 299 S. W. 985.

The statute requires such contracts to be in writing, signed by the party charged. The purpose of the statute is to provide against the uncertainty of contradictory parol evidence in such cases. The language of the contract here is unambiguous. It is expressed in ordinary words. There is no latent ambiguity. The purpose of the statute would be entirely defeated, if in such cases evidence were allowed contradicting or varying the plain meaning of the contract on its face when read in the light of all the circumstances surrounding the parties when it was made.

Bennett also relies on the fact that the company allowed another to maintain a signboard on one of its lots, but the proof shows that this was done under a contract for a limited time simply as an accommodation, and that the signboard was removed before this case was tried. The covenant has no application to appellee in the use of its property. On the whole case, no reason appears for disturbing the judgment of the circuit court.

Judgment affirmed.