## Bard et al. v. Stein

*H. Clay Burkholder* and *Windolph & Mueller*, for plaintiffs.
*John E. Malone*, for defendant.

ATLEE, J., April 14, 1931.—

### Statement of the pleadings

The bill in equity in which this injunction was issued was filed by Ellis F. Bard, William O. Frailey, Jr., and John Marks, plaintiffs, against Clarence J. Stein, defendant. All of the plaintiffs own homes in the City of Lancaster,

and these homes are located close together. Bard is the owner of the premises known as No. 606 East End Avenue, formerly known as Chester Avenue. William O. Frailey, Jr., is the owner of the premises known as No. 113 South Marshall Street, and John Marks and Martha Anna Marks, his wife, are the owners of the premises known as No. 111 South Marshall Street. The defendant, Clarence J. Stein, is the owner of a certain lot of land, with a three-story brick dwelling house erected thereon, situated at the southeast corner of East End Avenue, formerly Chester Avenue, and Marshall Street, in the City of Lancaster, Pa., known as No. 602 East End Avenue. The defendant's premises extend along Marshall Street 90 feet and 6 inches. The title to all of these properties goes back to the common ownership of John W. Hiemenz, a well known builder and developer of real estate in the City of Lancaster. There are no particular restrictions as to the kind or character of building which may be erected upon the plaintiffs' premises, but the deed to the defendant Clarence J. Stein says: "Provided, however, that no stable, shed or privy shall ever be erected on the hereby granted premises." The above restriction appears in the deed of Allan S. Killian and Tweda C. Killian, his wife, to Clarence J. Stein, the defendant in this bill, dated March 25, 1931, entered in the recorder's office as No. 6819, but not yet recorded at length to any volume or page. By this deed the said defendant has obtained title to No. 602 East End Avenue, on which premises the plaintiff alleges that the defendant, in violation of the restrictions contained in his deed, is now in the act of erecting a frame structure to be used as a garage on the rear of the said premises No. 602 East End Avenue and immediately adjoining the premises of John Marks, which latter premises are known as No. 111 South Marshall Street, Lancaster, Pa.

2. The answer of the defendant admits the allegations as to the descent of title of the several parties to this litigation, and the defendant "avers that he does not now, nor does not intend in the future, to erect a shed in the rear of his premises as alleged in said paragraph, but on the contrary is erecting a garage and has obtained a permit from the City of Lancaster for that purpose and that purpose alone."

3. The testimony shows that the defendant is erecting, three inches back of the house line on Marshall Street, a frame shed-like structure to be used as a garage. This structure has a concrete foundation; its frame is composed of 2 in. x 4 in. lumber. It is to be covered by sheathing of boards 1 in. x 12 in. The sides of the structure, according to the testimony, are to be covered by material known as "art-brick," which comes in sheets. The flat roof is to be covered by a roofing material known as slot surfaced roof, which comes in rolls. Also, it was testified, that a concrete floor is to be put in the structure, that it is to have a window looking out on Stein's premises, and is to have a water connection in it. The issue raised, therefore, is:

(a) Is this proposed structure of a kind whose erection is prohibited by the restrictions in the defendant's deed; and, (b) a legal question — the defendant contending that the plaintiffs have no standing in this case, because at the time of the conveyance to the plaintiffs' predecessors in title there were in existence no restrictions imposed upon the kind of structure to be erected on the defendant's land. . . .

### Discussion of questions of fact and law involved

(a) Is the structure intended to be erected by the defendant of a nature whose erection is prohibited by the restriction in the defendant's deed, provided said restriction is effective?

Inspection of the photographs offered in evidence, identified as exhibits "1" and "2," shows that the construction of the structure contemplated will most seriously affect the properties of Marks and Frailey. In view of the open location of defendant's land, it being situated on a street corner, and considering the question of the erection of a stable, shed, or privy, on a lot of the location shown in the photographs and of the dimensions shown by the testimony, the court feels compelled to say that the restrictions in the deeds giving title to Stein should be enforced according to, but not beyond, the fair and natural meaning of the words used, read in the light of the circumstances under which they were used: Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S. W. (2nd) 910, 61 A. L. R. 453. Reading the words "stable, shed, or privy," in the light of the circumstances in which they were used, that is, considering the size and location of the Stein lot according to, but not beyond, the fair and natural meaning of those words, the court feels bound to say that the words "stable, shed, or privy," cover a shed-like structure such as the defendant in the instant case has started to build.

(b) Have the plaintiffs a legal right to enforce the restriction?

All of the plaintiffs to this bill took their title from John W. Hiemenz and Julia C. Hiemenz, his wife, in March, 1909, and in the deeds to these plaintiffs there are no restrictions. The defendant, Clarence J. Stein, takes title through a predecessor in title who took title from John W. Hiemenz and Julia C. Hiemenz, his wife, by deed dated September 28, 1910. The defendant has raised the question that the plaintiffs have no standing here, because at the time of the conveyance to plaintiffs' predecessors in title there were in existence no restrictions imposed on the land now the defendant's land.

In equity, the test by which to determine whether a covenant in a deed runs with the land is the intention of the parties. To ascertain the intention, resort must be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant. Where the restriction still is of substantial value to the dominant lot, equity will restrain its violation if relief is promptly sought: Landell et al. v. Hamilton et al., 175 Pa. 327, 333, 334, 337.

The Landell v. Hamilton case is important, because it establishes the principle that a grantor may impose upon one lot out of a group of lots restrictions not imposed upon the other lots.

The same case in another phase will be found in Landell et al. v. Hamilton et al., 177 Pa. 23, wherein it appears that a modification of the order made in the first decision does not affect the principle of law here cited.

Where a vendor, instead of imposing the burden on the property sold for the benefit of that retained, reverses the servitude, laying the restriction on the land retained for the benefit of the land sold, it would seem that the same reasoning ought to apply and that the rule here should be that such restrictions may be enforced by the grantees of the covenantee against the covenantor or his grantees: 37 L. R. A. (N. S.) 23, 24.

The vendor's object in imposing the restriction must in general be gathered from all of the circumstances of the case, including the nature of the restrictions.

In making a covenant, the grantor has the legal right to impose the condition from any motive, and it is immaterial what that motive is, and it has even been said that he can impose it in favor of property he does not own if he sees fit to do so: Hays v. St. Paul M. E. Church, 196 Ill. 633, 63 N. E. 1040, see lower right hand of page 1041.

There is no requirement of notice as a pre-condition for the availability of the benefit. It is available, if available at all, whether or not the person asserting the right to the benefit took "with knowledge of the existence of the restriction:" Ervin on Building and Use Restrictions in Pennsylvania, page 141, section 138. (Foot-note says: "Rogers *v.* Hosegood [1900], 2 Chancery Div. 388, 398, 407. No Pennsylvania case has been found.")

This case, reported in 2 Chancery Division on page 398, says: "The defendant is not injured, for he bought the land with knowledge of the covenant, and he can claim no more than the land with that burden upon it."

The court feels bound to find as a conclusion of law and as a conclusion of fact that John W. Hiemenz in imposing upon the Stein lot the restriction set forth in the deed of Hiemenz to Stein's predecessors in title, intended to protect the properties already conveyed by him and, therefore, that the owners of said adjoining lots have a right to enforce the restriction imposed upon the Stein lot.

Injunctions are frequently allowed to restrain the violation of covenants restricting the use of land. "When the owner of land enters into a covenant concerning it, when in a deed the grantor or the grantee covenants, or in a lease the lessor or the lessee covenants, concerning the land, concerning its use, restricting certain specified uses, stipulating for certain specific uses, subjecting it to easements or servitudes, and the like, and the land is afterwards conveyed, or sold, or passes to one who has actual or constructive notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it, at the suit of the original covenantee or of any other person who has a sufficient equitable interest, although perhaps without any legal interest, in such performance." The application of this doctrine is wholly independent of the question whether the covenant is of such a character as to run with the land. It is a creation of equity and can be enforced by an equitable remedy: Pomeroy's Equity Jurisprudence, section 1693.

When it clearly appears that such restrictions are intended to inure to the benefit of other land, at the time of conveyance or formerly belonging to the grantor, a subsequent grantee of such other parcel may enforce the restriction by injunction. The principal question to be determined in such cases is whether the intent is sufficiently clear to warrant the court in giving relief. It is a matter for construction of the words of the covenant, in connection with the surrounding circumstances. If the language is explicit in stating the intent, the grantee's right is admitted: Pomeroy's Equity Jurisprudence, Sec. 1696.

Ervin in his valuable book "Building and Use Restrictions in Pennsylvania" says (see page 163, paragraph 5) :

"Where there are successive conveyances, it is not presumed that the earlier grantees take the benefit of covenants in later grants unless the common grantor-covenantee has covenanted with the earlier grantees that he will make like restrictions in the later conveyances or unless there is a building scheme." It is to be noted here that the author says that "it is not presumed."

The author then goes on to say "but either of these circumstances creates an implied promise to give to earlier grantees the benefit of later - created restrictions." In the instant case there is no covenant with the earlier grantees that the grantor would make restrictions in conveying the land now the Stein

lot, nor is there a building scheme. Viewing the Stein lot from the photographs offered in evidence the reason for the restriction imposed on said lot immediately becomes apparent. It is noted that the author says: "It is not presumed that the earlier grantees take the benefit of covenants in later grants." If there is any equitable reason why the earlier grantees should take the benefit of the covenant in later grants, even in the absence of a covenant with the earlier grantees that such a restriction would be imposed in the later conveyance, and even in the absence of a building scheme, it seems to the court that such equitable reason in the instant case should overcome the presumption referred to by the text writer.

H. John Hiemenz testified that the properties of the plaintiffs and of the defendant were improved and developed by his father, the late John W. Hiemenz. John W. Hiemenz owned considerable land in this block on South Marshall Street and along what is now East End Avenue, but formerly was called Chester Street. There is no evidence that any houses were built on this land prior to the erection of the houses now owned by the parties to this suit, and, therefore, John W. Hiemenz must have subdivided what was an open tract of land into lots on which he erected the residences of the parties to this action.

It is to be remembered that Bard, Frailey and Marks took title directly from John W. Hiemenz, the original developer of this tract. Also, it is to be remembered that, having developed the tract, John W. Hiemenz in his deed to Stein's predecessors in title, namely, by deed dated September 28, 1910, to Ellen B. Amer, imposed upon the Stein lot the restrictions which are the subject of this litigation. Again viewing the photographs offered in evidence, the reason for Mr. Hiemenz making this restriction is apparent. While it is true that he had no formal general building scheme in which restrictions such as those used in the Stein conveyance were imposed in every conveyance, yet where the developer of a tract of land imposes upon one lot a restriction so manifestly important to the owners of other lots, which owners took title from the developer of the tract of land, the court feels that said adjoining owners should be given the right to enforce the restriction, especially where failure to enforce the restriction so clearly would interfere with the appearance and use of the adjoining properties.

In reaching this conclusion, the court may have gone somewhat outside of the hard and fast rule of established precedent, yet the court feels that equitable remedies should be available where an equitable need for such remedies is presented to a chancellor.

The purpose of the courts of equity is to enforce equitable principles as the need of each particular case demands. The court feels that the need of the instant case establishes practically a unique situation, a situation in which the court should do what amounts to substantial equity between the parties to this litigation.

The court has a right to consider the situation of the property in considering the question as to whether or not restrictions imposed thereon have been imposed for the benefit of other lots: Thompson on Real Property (1929 Supplement), Sec. 3402; Hill v. Levine, 252 Mass. 513, 147 N. E. 837.

The foregoing cases are cited as authority for this statement, namely, that an exception to the general rule may be found in the situation of the lot restricted. In other words, the situation of the lot itself may be ample reason for the imposing of the restrictions and for giving to the owners of adjoining lots the right to enforce the restriction.

### Conclusions of law

1. The court finds that the erection by the defendant of a structure such as has been testified to be in process of erection in the instant case violates the restriction in the deed from John W. Hiemenz to Stein's predecessor in title, and the court finds that Stein had notice of such restriction.

2. The plaintiffs, as owners of nearby lots and as common grantees of John W. Hiemenz, have a right, under the circumstances of the instant case, to enforce the restriction in the Stein deed.

### Decree nisi

And now, April 14, 1931, the court enters the following order:

1. The motion to dissolve the preliminary injunction is overruled.

2. Until final hearing, the court continues the preliminary injunction restraining the defendant, his agents, servants and employees, from erecting, or completing, the frame structure now in process of erection on his said premises and from violating the restriction contained in the defendant's deed.

ATLEE, J., July 11, 1931.—In this case, the solicitors for the plaintiffs and for the defendant have formally stipulated and agreed that the cause may be finally adjudicated and determined by the court upon the testimony heretofore taken on the defendant's motion to dissolve the preliminary injunction granted herein.

Upon the motion to dissolve the preliminary injunction, the court, on April 14, 1931, filed an exhaustive opinion.

And now, July 11, 1931, upon consideration of the foregoing cause, it is ordered, adjudged and decreed as follows:

### Decree

1. The defendant, Clarence J. Stein, his agents, servants and employees, are perpetually enjoined from erecting and completing any shed on the premises of the said defendant.

2. The court now issues a mandatory injunction, commanding the defendant, Clarence J. Stein, to remove from his premises that part of a certain shed already erected by him at the rear of his premises.

3. The defendant, Clarence J. Stein, is directed to pay the costs of this proceeding.

ATLEE, J., October 10, 1931.—Upon careful consideration of the defendant's exceptions, filed July 21, 1931, to the court's findings of fact, conclusions of law and decree nisi, filed on July 11, 1931, the court dismisses the said exceptions in whole and affirms the decree nisi heretofore entered.

### Final decree

And now, October 27, 1931, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. The defendant, Clarence J. Stein, his agents, servants and employees, are perpetually enjoined from erecting and completing any shed on the premises of said defendant.

2. A mandatory injunction is hereby issued, commanding the defendant, Clarence J. Stein, to remove from his premises that part of a certain shed already erected by him at the rear of his premises.

3. The defendant, Clarence J. Stein, is ordered to pay the costs of this proceeding. From George Ross Eshleman, Lancaster, Pa.