## CHANDLER v. SULLIVAN et al.

Court of Appeals of Kentucky.

Feb. 19, 1954.

W. B. Early, Williamsburg, for appellant.

T. E. Mahan, Williamsburg, for appellees.

STANLEY, Commissioner.

In a suit to quiet title, it was adjudged that the plaintiff, now appellant, Elmer Chandler, does not have title to about one acre of rough land between State Highway No. 92 and the Cumberland River.

The appellant's first point is that the defendants pleaded a counterclaim with the result that the issue became and now is whether the plaintiff or the defendants, Garrett Sullivan, et al., have superior title; that when the plaintiff established his title (as he claims) the burden shifted to the defendants and they did not meet it.

Originally the defendants filed an answer and counterclaim in which they asserted their own title. However, before any responsive pleading had been filed, without objection, the defendants withdrew their original pleading and filed only an answer in lieu thereof. This substituted pleading consists of a traverse and in connection therewith, a statement that any deed of conveyance which the plaintiffs had received "is void and transfers no interest in the said tract of land because said grantors had no right, title or interest in said lands and had no right or authority to convey said tract of land to the plaintiff herein." No affirmative relief was prayed. The defendants merely asked that the petition be dismissed and the plaintiff "take nothing by reason thereof" and for costs. The judgment only canceled the plaintiff's deed from Lawson and wife and dismissed the petition.

The appellees agree to the appellant's proposition that a pleading, although denominated an answer, may be by its terms also a counterclaim. The question is whether the statement or allegation in the present pleading (merely styled "answer") that the deed under which the plaintiff claimed title, was void, and, therefore, passed no title, constituted the pleading of a counterclaim. A counterclaim must be sufficient as a petition and contain a prayer for specific affirmative relief. The substituted answer contains neither. In form it is much like that considered in Taylor v. Wilson, 182 Ky. 592, 206 S.W. 865, which, taken as a whole, was but a denial of the right of the plaintiff to establish his title. We do not think Bennett v. Parsons, 226 Ky. 782, 11 S.W.2d 935, 61 A.L.R. 453, relied upon by the appellant is of this characterization. Though the prayer of the de-

fendants was in almost the exact language as the present answer, Bennett was in possession of the land and was making an effort to seize the plaintiff's title upon the ground that she had obtained title through a fraudulent conveyance. The defendant was trying to sustain his title by defeating the plaintiff's title. In the case at bar the court under the pleading could not have adjudged title in the defendants. The Bennett opinion is construed and the case distinguished upon these grounds in McGiboney v. Newman, 277 Ky. 835, 127 S.W.2d 860, and other later cases. In the other cases cited by the appellants the defendants had asserted title or had asked affirmative relief.

The sole issue in the present case was whether the plaintiff, Chandler, could establish his title and possession of the land. Combs v. Jones, 244 Ky. 512, 51 S.W.2d 672. The trial court held he did not do so. The appellant is, therefore, obliged on the appeal to convince this court that the judgment is erroneous.

The appellant, Chandler, bought the land from Frank Lawson on May 17, 1947, and the appellee, Sullivan, in July following acquired a larger body of land which he claimed embraced the parcel in controversy. The judgment cancels the deed from Lawson to Chandler and dismisses Chandler's petition. The judgment recites that the court had considered the pleadings and proof and "The evidence of the old timers in the community preponderate in favor of the defendant's theory of the case."

Chandler's deed describes the parcel thus:

"Beginning with a state road line at Loudon Bridge and going with the state road to the Smith and Stinson Line; and thence with the Smith and Stinson line to the White Oak corner; thence with the county road back to the beginning corner."

When Chandler was negotiating for the parcel (for which he paid $125) he heard there was some question about the title, but was satisfied when he examined Lawson's deed, which called for a white oak stump. Lawson pointed out what he claimed to be that stump but did not show him the lines. Lawson's deed from McKiddy heirs conveyed two tracts. That of which the involved parcel is claimed to be a part contained 20 acres and is thus described:

"Beginning at a sycamore stump at the corner of garden thence S 15 poles to a stake on top of long hill; thence E 59 W 48 poles to a stake in Stinson line; thence with Stinson and Smith line across a clift to a white oak corner; thence with the county road to the stake at the school house lot; thence with the school house lot to the road; thence with the road to the beginning."

Preceding deeds differ one from another both in quantity and in description. About the only point in common is a reference to a white oak tree as a corner and a county road as a line. Chandler bought this river bluff with an indefinite general description. At one time there were two county roads—one along the south side of the parcel at the river bank and the other higher up on the north side of the lot. When a bridge was erected at or near the east line, it seems that the upper county road became a state highway. The changes in the boundary do not seem to have been given much consideration in describing the land in later deeds. The storm center of the controversy seems to be the location of the white oak stump and the lines leading to and from it. Doubtless, it was this uncertainty that led the court to accept as the better evidence the testimony of "the old timers in the community," and that evidence did not show the parcel to have been embraced in Chandler's chain of title prior to the deed he received from Lawson and perhaps one or two other previous conveyances. The only certain thing about this record (three volumes) is the uncertainty itself. Thus, two surveyors reached different conclusions. The chancellor is an able judge, experienced in deciding controversies of this character. Doubtless he had the benefit of a personal knowledge of

the lay of the land and the various locations of the former and present roads. Under such conditions we are not persuaded that the judgment is erroneous.

Judgment affirmed.