## Siciliano *v.* Misler, Appellant.

Argued March 18, 1960.  Before JONES, C. J., MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Edward J. Harkins,* with him *Gerald K. Gibson,* for appellants.

*George M. Spence,* with him *Spence, Custer, Saylor & Wolfe,* for appellees.

OPINION BY MR. JUSTICE BOK, May 4, 1960:

The case involves the interpretation of the wording of a real estate restriction.

Suburban Shops, Inc., owned land in Lower Yoder Township, Cambria County, and was trying to develop it into a shopping center.  In order to induce the American Stores Company to build a market there, Suburban offered to restrict the rest of the land that it owned near by against use for stores and parking.  This being satisfactory, Siciliano, Suburban's president, bought a piece of land and leased it to American in April, 1953, and a store and parking lot were later put on it.

In July, 1954, Suburban created a Declaration of Restrictions covering other land that it owned in the area and recorded it.  This declaration contained the

following provision, which is the root of the trouble now: "No part of the premises hereinafter described shall at any time hereafter be used for the operation of, occupied by, or have constructed thereon a store or market of the kind and character usually and customarily maintained and designated as a super market for the sale, at retail to the public, of raw or processed food products which are not consumed on the premises, or the parking of motor vehicles for the convenience of the patrons of such a store or market; . . ."

Between 1955 and 1957 appellant defendants bought certain neighboring land from people named Willett which was outside the restricted area and hence was unrestricted. Appellants then built a super market on this land. At the same time they bought an immediately contiguous tract which, however, lay within the restricted area and hence was restricted against stores and parking. They had this area covered with a hard surface and their patrons have been parking there, whether casually or by design is of no moment.

Appellees protested and then filed suit in equity. The lower court upheld the restriction against the defendants and enjoined them from .allowing their market patrons to park on their restricted land and from employing anyone to direct and police such parking. Defendants appealed.

It is apparent that appellants have a single piece of land, part of it restricted and containing the parking lot, and part of it unrestricted and containing the market. Appellees concede that the market is not in violation. The sole question therefore relates to the status of the parking lot.

The critical part of the restriction is the words "such a". Plaintiff appellees contend that these words refer to a market on or off restricted land, their point being that restricted land may not offer parking service to any market wherever located. Appellants argue

that the restriction cannot operate beyond restricted ground and that the words in question restrict market-with-parking only when both elements are on restricted ground.

Both views are plausible, but the policy of the law clearly favors the appellants.

Both briefs cite the basic approach to the problem, the rationale of *Jones v. Park Lane For Convalescents, Inc.*, 384 Pa. 268 (1956), 120 A. 2d 535, where Mr. Chief Justice STERN said: "Restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

We also said, Mr. Justice BELL, in *Sandyford Park Civic Association v. Lunnemann*, 396 Pa. 537 (1959), 152 A. 2d 898: "A man has a right to use his own home or property in any way he desires provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) violate any covenant, restriction or easement in his deed; or (3) create a nuisance; or (4) violate any laws or zoning or police regulations which are both Constitutional and valid."

The restrictions will be construed most strictly against the plaintiffs, since they created it. It is obvious, we think, that when it says "no part of the premises shall be used for a store or market", it refers to a store on the premises subject to the restrictions and not elsewhere. Then, when it mentions parking, it refers to "such a store or market", that is, one that

would be banned from the restricted premises. Appellees urge that the antecedent of "such" is "a super market", which is purely descriptive and means a super market of a type to be found anywhere, while appellants contend that the antecedent is "a store or market" on restricted land. It is here that the policy of the law directs us to be stern with the restrictions, yet even without this policy we should prefer as antecedent "a store or market on restricted land" before the thing it is said to be "of the kind and character" of, namely, any super market. A primary antecedent is better than a secondary.

. Plaintiffs argue that appellants' interpretation renders the restriction meaningless surplusage because the owners of the restricted land may not have a market on it and hence there could be no patrons of a non-existent market to serve with a parking lot. This is a false exercise in logic. There could be no such argument if the restriction banned a store only or a parking lot only: neither could be created. But because both are mentioned as a unit, appellees would separate them and treat them singly, in defiance of the words of the restriction. Besides, the premise of the argument is faulty. Siciliano testified "we procured a release from the American Stores Company" in order to allow the Atlantic & Pacific Tea Company to erect a store on part of similarly restricted ground in another development. The idea of a "non-existent market" therefore is inaccurate since it can always be brought into existence by a release of the restriction.

In restricting real estate a scrivener acts at his peril: if his creation is not self-sustaining it is nothing. Appellees accuse appellants of having to add to the restriction a further element, so that "such a store or market" would read "such a store or market erected upon the restricted land". We do not agree, because the idea is already built into the restriction, in the

phrase "no part of the premises . . . shall . . . be used", etc. as a store or market. This effectively limits prevention of store or market to the premises. It is, rather, the appellees who must add "wherever located" to the restriction in order to complete their thought.

Both parties argue that the intent of the parties sustains them. We think it unnecessary to stray beyond the confines of the restriction to find its meaning. The analysis of the language set out above satisfies us that the appellants' view of the words themselves is clear and that the appellees' is not, unless the words are added to. This leaves us, perforce, with language that is plain and unambiguous, and where this is so the intention of the parties must be gleaned from the agreement alone: *Kennedy v. Erkman,* 389 Pa. 651 (1957), 133 A. 2d 550; *Atlantic Refining Co. v. Wyoming National Bank,* 356 Pa. 226 (1947), 51 A. 2d 719.

Hence we hold that since the store and the parking lot that serves it are not both on restricted land, the restriction does not apply to the parking lot alone. To hold otherwise would be an unwarranted extension of the restriction.

Since our conclusion works a final determination of the case, we need not consider the other points presented.

The decree is reversed and the complaint is dismissed, appellees to pay the costs.