234 So.2d 883

**CENTERS, INC., a Corporation**

**v.**

**Guy GILLILAND et al.**

**6 Div. 365.**

Supreme Court of Alabama.

April 30, 1970.

---

Dominick, Roberts & Davidson, Tuscaloosa, for appellant.

MERRILL, Justice.

This appeal is from a decree permanently enjoining appellant, Centers, Inc., from using three lots or parts of them as parking lots, when the lots had been purchased by it subject to restrictions.

Mr. and Mrs. Guy Gilliland owned approximately twelve acres of land in the Alberta City area of Tuscaloosa and, in 1946, divided the land into a residential subdivision of forty-six lots, known as Durrett Grove, and duly recorded certain restrictions on the use of the land. The pertinent restrictions are as follows:

"3. No business of any kind, character or description can be carried on on any lot or in any building constructed on any lot.

"7. That no noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"9. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until *November 5, 1971*.

"10. If the parties hereto, or any of them or their heirs or assigns, shall violate or attempt to violate any of the covenants herein it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or equity against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages or other dues for such violation."

Various individuals purchased the Durrett Grove lots. In late 1960, appellant purchased two vacant lots and a part of another vacant lot from the then owners. The deeds given to appellant stated that the property was subject to the said restrictions. After clearing this land, appellant constructed a store building, which included three stores leased for use as a grocery store, shoe store and a fabric outlet. A common parking area was paved and spaces were marked off in front of the building.

The Durrett Grove lots, owned by appellant and subject to the restrictions, were not paved at the time of the paving of the common parking area. After appellant acquired the Durrett Grove lots, the trees on the lots were trimmed by the Alabama Power Company. Harmon B. Looney, the president of appellant corporation, testified that the trees were trimmed so closely that it was decided they should be removed. The wind began to blow dust from the exposed lots into the Durrett Grove

subdivision. After some of the residents complained, appellant paved the exposed lots at a cost of $2,667.30, built sidewalks and erected a screen fence. Electric lights were installed on metal poles and shades were placed to shield the light from the houses in Durrett Grove.

Complainants, residents of the Durrett Grove subdivision, brought this suit seeking an injunction to prohibit the appellant from using the property as a parking lot for the general public in violation of the restrictive covenants placed upon the property. They alleged that the use of the land had decreased their property values because of the glaring lights, dust, fumes and noise, and that many automobiles are not removed from the land until long after the stores are closed. Further, it was alleged that the use of the land by appellant or by its tenants is such as to create a nuisance insofar as complainants are concerned.

Appellant denied the allegations of the bill, and the cause was heard ore tenus by the court. Guy Gilliland, one of the complainants, testified that there are fourteen parking spaces marked off on the lots subject to the restrictions, and that he has counted as many as fifty-three cars at one time parked on the restricted lots. Appellant offered testimony that the character of the general area around Durrett Grove has changed from its fundamentally residential state when the restrictions were imposed in 1946.

The final decree granted the relief prayed for, restrained appellant from allowing its tenants, their employees and the general public to park on the lots until the expiration date set by the covenants, which was November 5, 1971.

Appellant's motion for a rehearing was overruled and an injunction bond was fixed at $750.00. Notice of appeal was filed on July 25, 1966, and upon posting of the bond, the injunction was suspended pending the outcome of this appeal.

No brief was filed for appellees and no argument was presented when the cause was orally argued for appellant and submitted to this court.

Two grounds of error are relied upon by appellant as reason for reversal of the decree.

In assignments of error 3, 4, 7, 9 and 11, appellant contends that the evidence is insufficient to show that a business was conducted on the Durrett Grove property in violation of the restrictive covenants.

The restrictions specifically state that "No business of any kind, character or description can be carried on on any lot or in any building constructed on any lot." A case in point is Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S.W.2d 910, 61 A.L.R. 453, wherein a similar restriction was placed on land adjacent to a commercial enterprise, a restaurant and dance hall. The owner sought to use the adjoining land to extend his parking lot, but the court held that such a use violated the restrictive covenant, stating:

"The use of the lots by Bennett's patrons was plainly a use for business purposes. It was necesary to have a parking place for these automobiles. The parking place was an incident to the roadhouse, without which the roadhouse could not have been successfully operated under the circumstances. Bennett was carrying on the business of operating the roadhouse; and, in providing parking places for his patrons, he was simply performing an incident of that business. While such provisions in deeds are not construed to create restrictions beyond the fair and natural meaning of the words used, read in the light of the circumstances under which they were used, they will be enforced according to their fair and natural meaning, in the absence of fraud or mutual mistake. To hold that no trade or business was permitted on these lots would be to refuse to enforce the provision according to the plain meaning of the common words of everyday speech in which it is expressed; for such a use as Bennett was making of the property would be

especially objectionable in a residential section, and the restriction was inserted to protect the subdivision for residential purposes."

■ Here, there is sufficient evidence that the property was used as a part of appellant's parking lot. Harmon B. Looney, the president of appellant corporation, testified that customers of his tenants parked on the property. In brief, appellant states: "We concede that the evidence introduced shows that there are some lines for parking on the western portion of these lots." Even though some people might have parked on the property while not shopping in the stores owned by appellant, a parking lot was a necessary feature of such retail businesses. The nature of the property, being paved, lighted, partially marked off and contiguous to the original parking lot served as an invitation for customers to park there. We cannot say that the trial judge erred in his determination that the land was used for business purposes. Having reached this conclusion, we find it unnecessary to consider whether the use of the land violated restriction number seven, against offensive activities which may become a nuisance.

In assignment 8, appellant contends that the injunctive relief should not have been granted because the neighborhood has changed in character from residential to commercial.

■ While the general neighborhood has changed, no evidence was presented concerning any change within the twelve-acre subdivision. It remains utilized exclusively for residential purposes in conformity with the restrictions. Those who have been led to buy lots or build homes in that locality by reason of the restrictive covenants are entitled to have their property preserved for the purpose for which they purchased it. Higdon v. Jaffa, 231 N.C. 242, 56 S.E.2d 661. The changes around the subdivision are not so great as to render the enforcement of the covenants inequitable or unreasonable. Since the original purposes of the covenants can be effectuated, we think that changes outside of the restricted area should not be allowed to defeat the purposes of the restriction. [See Chuba v. Glasgow, 61 N.M. 302, 299 P.2d 774; Morgan v. Matheson, 362 Mich. 535, 107 N.W.2d 825; Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943].

■ The trial court heard the evidence ore tenus and the finding of facts and the decree of the trial court in such cases will not be disturbed on appeal unless palpably and plainly wrong. Howard v. Harrell, 275 Ala. 454, 156 So.2d 140; Meador v. Meador, 255 Ala. 688, 53 So.2d 546.

Appellant purchased the property fully cognizant of the restrictive covenants, which will remain in effect until November 5, 1971. Appellant has not presented any reversible error in the trial court's decree.

This case was reassigned to the author of this opinion on April 9, 1970.

Affirmed.

LAWSON, HARWOOD, MADDOX and McCALL, JJ., concur.