786 So.2d 588 (2000)
ECKERD CORPORATION, Appellant,
v.
CORNERS GROUP, INC., etc., et al., Appellees.
No. 5D99-2096.
District Court of Appeal of Florida, Fifth District.
December 29, 2000.
Rehearing Denied June 12, 2001.
*589 Shawn G. Rader, of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellant.
Michael L. Gore, of Shutts & Bowen LLP, Orlando, for Appellees.
ORFINGER, M., Senior Judge.
Eckerd Corporation (Eckerd) appeals the denial of its request for injunctive relief. At issue is the enforceability of a restrictive covenant placed on a parcel of land by Eckerd, which Eckerd contends would be violated by appellees' plans to construct a competing Walgreens' Pharmacy. Because we agree that the trial court erred in its interpretation of the restrictive covenant, we reverse.
In February 1997,[1] Eckerd purchased a parcel of property at the northwest corner of SR 436 and Howell Branch Road in Seminole County (the "Corners Group Property" or the "restricted parcel"). It was Eckerd's intention to acquire additional adjacent property so as to have sufficient land for a prototype pharmacy and for the required parking, but it was unable to do so. In February 1998, Eckerd sold the restricted parcel to S. Clark Butler, Trustee, after first having duly recorded the following restrictive covenant in the public records of Seminole County.
No part of the property shall be used as a pharmacy or drug store or for the sale or offer for sale of any pharmaceutical *590 products requiring the services of a registered pharmacist, for a period fifty (50) years from April 7, 1997, and this restriction shall run with the land.
The deed to Butler contained the same restriction. Eckerd then built its prototype store diagonally across from the Corners Group Property.
In December 1998, appellees Corners Group, Inc. (Corners Group) purchased the restricted parcel from Butler, and on the same day, Butler sold adjacent (and unrestricted) property to appellees HB Plaza, Inc. (HBP). The officers, directors and shareholders of Corners Group and of HBP are the same, and are sophisticated real estate developers and investors. Appellees were aware of the restrictions when they purchased the Corners Group Property, and they knew of the location of the Eckerd store across the street when they purchased the property and when they proposed the site to Walgreens. At the December 1998 closing, Corners Group and HBP entered into a reciprocal agreement which essentially tied the Corners Group property and the HBP property for development purposes, granting cross-easements for ingress and egress, drainage, signage, parking and the like.
Corners Group then submitted a single development plan for a Walgreen's Pharmacy to Seminole County for approval. As presented to Seminole County by Corners Group, the Walgreens store building would be built on the H.B. Plaza Property and no part of the actual building would be constructed on the Corners Group Property. The Corners Group Property, however, which is encumbered by the restriction, would serve as parking for the store, would contain signage for the development, and would provide one method of ingress and egress to the store. The Walgreens store would contain a pharmacy offering the sale of pharmaceutical products requiring the services of a registered pharmacist.
Eckerd moved for a temporary injunction to stop Walgreens from building its pharmacy across the street. At the evidentiary hearing on the injunction, the Principal Planner for Seminole County testified that because of zoning requirements the parking spaces proposed for the Corners Group Property (the restricted parcel) were absolutely essential to the proposed site plan, and without them the project would not be approved. Following the hearing, the trial court granted Eckerd's request for a temporary injunction. However, on final hearing, after the parties stipulated that no additional issues of fact were present and that the court could render a decision as a matter of law, the court denied Eckerd's motion for entry of final judgment, ruled in favor of appellees and dissolved the temporary injunction.
Eckerd contends that the trial court erred when it held that the restrictive covenant does not prohibit the construction of parking spaces, landscape islands or signage in the restricted parcel by its clear and unambiguous terms. Corners Group contends, that because the pharmacy is to be located on unrestricted property, and no part of the structure is actually located on the restricted parcel, merely using the restricted parcel for adjacent parking does not violate the covenant.
Neither the parties nor this court has been able to find a Florida case squarely addressing the issue before us. The general rule of covenant interpretation has been expressed, however, in a long series of cases. While covenants that run with the land must be strictly construed in favor of the free and unrestricted use of real property, a restriction which sufficiently evidences the intent of the parties and which is unambiguous will be enforced *591 according to its terms. Mizell v. Deal, 654 So.2d 659 (Fla. 5th DCA 1995). See also Cottrell v. Miskove, 605 So.2d 572 (Fla. 2d DCA 1992). Put another way, although restrictive covenants should be narrowly construed in favor of the free transferability of property, they should never be construed in a manner which would defeat the plain and obvious purpose and intent of the restriction. Robins v. Walter, 670 So.2d 971 (Fla. 1st DCA 1995); Brower v. Hubbard, 643 So.2d 28 (Fla. 4th DCA 1994).
Appellees point to the case of Siciliano v. Misler, 399 Pa. 406, 160 A.2d 422 (1960), as a decision which supports the trial court's ruling. There, appellants had purchased two adjacent tracts of property. One of the tracts was unrestricted, while the other was subject to the following restriction:
`No part of the premises hereinafter described shall at any time hereafter be used for the operation of, occupied by, or have constructed thereon a store or market of the kind character usually and customarily maintained and designated as a super market for the sale, at retail to the public, of raw or processed food products which are not consumed on the premises, or the parking of motor vehicles for the convenience of the patrons of such a store or market; * * *.'
Appellant built a supermarket on the unrestricted parcel and built the parking lot for the market on the restricted parcel. In reversing a temporary injunction granted by the lower court, the Pennsylvania Supreme Court, relying on the strict construction policy, held that the words "such a" referred only to a store on the restricted parcel, so that both the store and the parking had to be on the restricted parcel in order for the restriction to apply. We find this logic flawed for the reason that it makes the phrase "or the parking of motor vehicles for the convenience of the patrons of such a store or market ..." superfluous. If both the store and the parking are on the restricted parcel there is no need to refer to the parking separately, because the store alone violates the restriction. Clearly, the obvious purpose of the reference to parking was to restrict parking service to a market wherever located, in order to give meaning to those words.
The case of H.E. Butt Grocery Co. v. Justice, 484 S.W.2d 628 (Tx.Civ.App.1972), is directly on point here. Coleridge sold appellant Butt (HEB) a parcel of land and at the same time placed a restriction on adjacent land owned by Coleridge, to wit:
For benefit of HEB, its successors and assigns, Coleridge hereby places the following restrictions on * * * against the use of any portion thereof for the purpose of conducting thereon a foodstore or food department for the storage or sale of off-premises consumption of groceries, meats, produce, dairy products, frozen foods, baking products * * *....
Later, Coleridge sold adjacent land to Justice, a portion of which was subject to the restriction. Justice intended to construct a grocery store on the unrestricted portion, and use the restricted parcel for parking, and sought a declaratory judgment that such use would not violate the restrictive covenant. The evidence reflected that, because of the zoning requirements for parking, the proposed foodstore could not be constructed without the use of parking facilities on the restricted tract. The trial court approved the use of the restricted tract for parking, but the appellate court reversed, holding:
In construing the restriction we must give effect to that which is expressly set out, together with that which is necessarily implied, to ascertain the intention of the parties. Any doubt or ambiguity *592 will be resolved against the restriction....
The restriction is `against the use of any portion thereof for the purpose of conducting thereon a foodstore'. Manifestly the purpose of such restriction was to prohibit the restricted tract from being used as any necessary part of a competing supermarket with HEB.
The proposed foodstore cannot be conducted without the use of the restricted area. Parking, ingress, egress, delivery of groceries to customers cars, are all under the record essential to conducting the proposed foodstore, and all would take place on the restricted tract. And the Waco City Ordinance requires the proposed foodstore to have 250 to 275 parking spaces in order to operate. This makes the use of the restricted tract an indispensable and mandatory part of conducting the proposed foodstore. And parking is essential to the use of a building, or to the conduct of a business therein....
The parking lot is thus an integral part of the proposed operation. The foodstore cannot be conducted without it. And the fact others may share in its use does not change this situation.
Parking, ingress, and egress are all necessary and integral parts of the conducting of the proposed foodstore, and are prohibited on the restricted tract by the plain language of the restrictions. Thus any use of the restricted tract for parking, ingress, and egress in connection with the proposed foodstore to be located on adjacent unrestricted premises, is violative of the restrictions .... (citations omitted).
Id. at 630-31. See also Sawdey v. Kopas Corp., 30 Colo.App. 534, 495 P.2d 1153 (1972) (McDonald's use of restricted parcel for parking violated covenant prohibiting use of property for restaurant operation or prepared food advertising or sale); Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S.W.2d 910 (1928) (use by owner of restaurant and dance hall of adjacent lots for parking violated restrictive covenant on adjacent lots that "no trade or business whatever shall be permitted or maintained on this property"); Centers, Inc. v. Gilliland, 285 Ala. 593, 234 So.2d 883 (1970) (defendant's use of property for parking as necessary feature of defendant's retail business violated restrictive covenant which proscribed use of property for business purposes); Scallet v. Stock, 363 Mo. 721, 253 S.W.2d 143 (Mo.952) (mortuary on unrestricted lot could not use lots restricted to residential use for parking as an adjunct to the mortuary); Borsvold v. United Dairies, 347 Mich. 672, 81 N.W.2d 378 (Mich.1957) (parking of dairy trucks on lots restricted against business violated restriction).
Finally, although in a different context, we have the recognition by our supreme court that parking for a business enterprise is an integral part of the enterprise. In Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla.1969), the owner of the shopping center contested the valuation for tax purposes of the parking areas, contending that these areas should not be assessed in the same amount as the improved areas. In denying this claim, the court said:
A shopping center planned and developed as a unit may embrace a diversity of stores so as to enable a shopper to fulfill his needs at one stop, but the success of the shopping center depends primarily upon sufficient parking area so as to alleviate the ever-increasing traffic problems. So it is that the land used for the parking area is an integral part of the shopping center and just as important to its development as the land upon which the buildings are erected. *593 The tax assessor was justified in placing the same value on the land used for the parking area as the land upon which the improvements were erected. (emphasis added).
Id. at 837.
Here, the manifest purpose of the restriction was to prohibit the restricted parcel from being used as any necessary part of a competing pharmacy. The proposed pharmacy cannot be built without the use of the restricted area, thus making the restricted parcel an integral part of the proposed pharmacy. We cannot separate the whole from the sum of its parts.
The order appealed from is reversed, and the cause remanded with instructions to grant appellant's motion for entry of a permanent injunction.
REVERSED and REMANDED.
THOMPSON, J. concurs.
GRIFFIN, J. dissents, with opinion.
GRIFFIN, J., dissenting.
I respectfully dissent.
In Florida, restrictive covenants must be strictly construed in favor of the free and unrestricted use of real property. Lathan v. Hanover Woods Homeowners Ass'n, 547 So.2d 319, 321 (Fla. 5th DCA 1989). As instructed by our supreme court, this is a rule of construction to be applied strictly, not merely given lip service. Id. In Florida those who seek to restrain the free use of another's land are limited to the covenant they drafted, not the one they should have drafted. The focus has to be on the intent of the parties as expressed by the clear and ordinary meaning of the terms used in the covenant. Intent unexpressed is unavailing; only the expressed intent can control. Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904 (1925). The record reflects that when Eckerd purchased the subject property, it knew that the property was not large enough for its prototype store. Accordingly, Eckerd set about attempting to assemble other adjacent properties in order to allow the store's development. When it was unsuccessful, it decided to sell the property. The declaration of restrictions Eckerd placed on the property was as follows: "No part of the property shall be used as a pharmacy or drug store or for the sale or offer of sale of any pharmaceutical products requiring the services of a registered pharmacist, for a period of fifty (50) years from April 7, 1997, and this restriction shall run with the land." When the property was sold, the same restriction was placed on the deed.
I have two problems with the majority decision. First of all, given the principles of construction applicable to this covenant, there is no justification for liberally construing the restrictive covenant and implying a scope of meaning that is obviously beyond its express terms. The words chosen by Eckerd are important: "No part of the property shall be used as a pharmacy or drug store ...." In most of the cases cited by the majority[1], an expansive reading of the restrictive covenant was supported by the use of very broad language in the covenant itself, such as: "The said premises shall and will not be used or be permitted to be used directly or indirectly in any restaurant operation ...." Sawdey v. Kopas Corp., 30 Colo.App. 534, 495 P.2d 1153-54 (1972). In Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S.W.2d 910 *594 (1928), the restrictive covenant provided that "No trade or business whatever" would be permitted or maintained on the property. The Bennett court disallowed parking because it found that the use of the lots by the patrons of the inn was a use of the property for "business purposes." In the Centers, Inc. v. Gilliland, 285 Ala. 593, 234 So.2d 883 (Ala.970) case, the restriction was similarly broad: "No business of any kind, character or description can be carried on...."
In Siciliano v. Mister, 399 Pa. 406, 160 A.2d 422 (Pa.960), the restrictive covenant provided: "No part of the premises hereinafter described shall at any time hereafter be used for the operation of, occupied by, or have constructed thereon a store or market of the kind or character usually and customarily maintained and designed as a supermarket ... or the parking of motor vehicles for the convenience of the patrons of such a store or market...." In refusing to enjoin the use of the unrestricted property as a parking lot, the Siciliano court reminded us:
We think it unnecessary to stray beyond the confines of the restrictions to find its meaning. The analysis of the language set out above satisfies us that the appellant's view of the words themselves is clear, and that the appellees' is not, unless the words ["wherever located"] are added to ["the restriction"].
All of these cases except Butt turn on the language actually used.
The language in this case is very precise and extremely narrow. There are no words of expansion at all. Certainly, based on its intimate familiarity with the property, if Eckerd had intended to bar all use of property auxiliary to a drug store, it would have and should have said so. Given the very limited existing case law on the status of adjacent parking lots and given the principles of construction applicable to restrictive covenants in Florida, it simply makes no sense for this court to attempt to do for Eckerd what Eckerd did not do for itself. Plainly, a parking lot is not a drug store. Presumably, Eckerd's response to this would be that "everybody knows" that a parking lot is part of a pharmacy, but that is not necessarily so. It may be that these stand-alone drug stores that are springing up in and around strip malls across Central Florida often have their own parking lot, but there is nothing in the record to suggest they have to have their own parking lot. Parking can be leased from the mall owner or adjacent property owners. Indeed, in this case, the restricted parcel (parking lot) and the unrestricted parcel (drug store) have separate, if related, corporate owners. Under the majority's reasoning, if the restricted property had been paved and leased to a shopping center for general parking, the restrictive covenant would be violated because a drug store is among the fifty stores in the mall whose patrons park there.
Also, there is sense to the notion that a restrictive covenant should not control the use of property beyond its own boundaries. The restrictive covenant in this case, for example, in no way restricts the use of this property as a parking lot. Any sort of parking lot could be put on this property and it could serve any sort of business imaginable, except, according to the majority, a drug store. Given that a parking lot is permitted on this property, except in connection with a use being made of unrestricted property, I do not see the sense of an expansive interpretation that prevents the owner of this property from using it for parking by persons who wish to patronize the adjacent drug store.
NOTES
[1] The factual recitation is from the joint stipulation of facts entered into between the parties hereto.
[1] The other case comes from Texas. H.E. Butt Grocery Co. v. Justice, 484 S.W.2d 628 (Tex.Civ.App.1972). Texas does not employ the same rules of construction as Florida and its interpretation of restrictive covenants appears more liberal. See, e.g., Highlands Mgt. Co., Inc. v. First Interstate Bank of Texas, N.A., 956 S.W.2d 749, 752 (Tex.App.1997).