(128 So. 796)

## MARSH v. CHEESEMAN.

### 6 Div. 395.

Supreme Court of Alabama.

May 15, 1930.

Rehearing Denied June 19, 1930.

William S. Pritchard, John D. Higgins, and Thos. E. McCollough, all of Birmingham, for appellant.

Ernest Matthews and Mullins & Jenkins, all of Birmingham, for appellee.

**BOULDIN, J.**

The bill was filed to enjoin the erection of a filling station in an alleged restricted residence district. The equity of the bill rests on alleged covenants running with the land restricting the area to high-class residential purposes.

In 1925 Hollywood Land Company surveyed and platted a subdivision known as Hollywood. It put to record the duly certified plat showing the layout of winding streets, designated "Drives," "avenues," and one "Boulevard," and showing lots of varied size and form, numbered serially from 1 to 96, with a few lettered lots, making, in the aggregate, some 103 lots.

Extensive advertising of "Hollywood Home Sites" was made in the Birmingham News. Among reasons urged for the purchase of same were these:.

"Because Hollywood is laid out for a residential park of exclusiveness and distinction, with large estates, lots of 100 foot front to lots of more than one acre, with the beautiful lawns protected by ample building lines.

"Because in Hollywood only desirable dwelling houses will be permitted, the minimum construction cost of any home will be $6,000.00.

"Because in Hollywood the home owner will be fully protected against cheap houses, stores, filling stations, tenement houses, or other undesirable encroachments."

Deeds executed to purchasers contained the following restrictive clause:

"It is understood, agreed, and made a part of this conveyance, that there will be but one residence erected on the front of the above described property, and that the plans and specifications of said residence will be sub-

mitted to the Hollywood Land Company for its approval and the same must be approved by said Company before the erection thereof. In order to protect the lawns, a uniform building line is established by the Hollywood Land Company and the grantee herein agrees to comply therewith in accordance with the stakes set out by said Hollywood Land Company."

Some 95 building sites were sold; some covering full lots as platted, and some fractions of same. Residences were erected on about half of these, all on plans approved by the company, and all of the Spanish type of architecture; the design being to have an exclusive residence subdivision of good homes of this type.

It seems clear enough that a building scheme was devised and the restrictive provisions were made an inducement to purchasers.

Complainant is the owner of a home in such district, holding under a deed containing the restrictive clause above quoted.

Respondent is the owner of a portion of lot 96, which was later replatted, and proposes to erect a filling station thereon. His deed has no restrictive clause.

"Where a defined district is platted and publicly offered as a restricted district, the restrictive clauses in the several deeds are construed as mutual covenants, each lot subject to a servitude or easement in favor of all the others, including unsold lots of the grantor in the same plat. Such servitude being appurtenant to and running with the land, any subsequent purchaser of a lot within the plat, with notice of the easement thereon, takes it subject thereto, as between himself and other lot owners, although no restriction is incorporated in his deed." Scheuer v. Britt, 217 Ala. 196, 115 So. 237, 239. See, also, Scheuer v. Britt, 218 Ala. 270, 118 So. 658, and numerous authorities cited in these cases.

That defendant Cheeseman had notice of the restrictive covenants running with the lots sold in this subdivision is not questioned. He was an incorporator, and vice president of the Hollywood Land Company, as well as an active sales agent at the time the division was put on the market.

The questions at issue in the case are whether lot 96 is within the restricted district, and, if so, whether the complainant has waived any right to enjoin the proposed use of same.

The recorded map makes no mention of a restricted district. Neither does the covenant incorporated in the several deeds make reference to the status of any other lot. So far as appears on the face of each deed, the covenant relates to that lot alone.

■ In Scheuer v. Britt, 217 Ala. 196, 115 So. 237, we declared that while courts adopt rather liberal rules of evidence to give effect to restrictive clauses where a building scheme has been promoted on the faith of such restrictions, still all such covenants are subject to the Statute of Frauds (Code 1923, § 8034). They cannot rest in parol. A permanent easement or incumbrance on lands must rest on something more enduring than the memory of witnesses. This record furnishes a clear illustration of how variant become the recollections of witnesses who undertake to depose to declarations and announced purposes of a few years ago.

All this would easily have been avoided if the plat referred to in the deeds had been made to show that the entire survey should constitute the restricted district; or if the purchasers had seen to it that the deeds so defined it.

■ We regard it a mere truism to say that where neither the deed held by the owner, nor anything in his chain of title, shows any restriction on the title therein conveyed, the burden of proof is on him who seeks to fasten such incumbrance thereon to adduce evidence legally competent to that end.

The trial judge heard the evidence of witnesses orally in his presence.

Much parol evidence was introduced to the effect that it was contemplated, publicly announced, and talked to prospective purchasers that a business center would be established in Hollywood. The weight of evidence seems to be that its location was to be about the northwest corner of the plat, known as lot 72. Lot 96, a large fan-shaped lot, lay on the west side of the tract, running a distance of 369.75 feet along the western boundary.

At the time of the survey and early sale of lots, this was in a sense the back side of the property; an old unimproved country road ran there. Evidence tends to show no effort was made to market this lot for any purpose at that time. Later on the Birmingham and Montgomery paved highway was located along this western boundary. It then became more valuable for business purposes. Owing to the state of improvements just across the highway, it seems not favored for residence purposes.

The territory was incorporated into the municipality of Hollywood. A zoning ordinance of the town zoned lot 72 as a business district. Complainant, Marsh, a member of the council, voted for the passage of such ordinance.

Later another zoning ordinance included lot 96 in the business district. Accordingly, respondent was granted a permit to erect the filling station at the point of lot 96, and was proceeding to do so when this bill was filed.

Courts should and do give no countenance to the invasion of the property rights of others merely because it is more profitable to do so. Hence, the evidence of the comparative

value of lot 96 for business and residential purposes at this time is given no weight.

But it cannot be said that the muniments of title, the plat, and the several deeds to purchasers, taken separately or together, conclusively show that the entire boundary platted, including lot 96, was within the restricted district.

In Scheuer v. Britt, 218 Ala. 270, 118 So. 658, 661, it was noted that the covenants in the deeds there involved recited "all lots sold for residential purposes only."

Inasmuch as complainant must rely on accompanying circumstances to show such was the intent and effect of these restrictive covenants, respondent was entitled to produce like evidence to negative such intent. We are impressed no special thought as to what would be done with lot 96 was in the mind of parties at the time; the owners were probably holding it open to await developments as to the Highway.

When Mr. Marsh voted to zone lot 72 as business property, he either committed himself to the idea that not all the platted area was in the restricted district, or else for reasons satisfactory to himself consented to disregard such restriction as to lot 72. In either event, this weakens his claim to equitable interference with the further zoning ordinance covering lot 96. It does not appear that he suffers any greater infraction of the restrictive covenant, if such there be, in the one case than in the other.

Indulging the presumption due the finding of the trial court in such case, we decline to reverse.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.