292 So.2d 103

**L. S. LANEY et al.**

**v.**

**Willard M. EARLY et al.**

**SC 268.**

Supreme Court of Alabama.

March 21, 1974.

Corretti, Newsom, Rogers, May & Calton, Birmingham, for appellants.

Ernest W. Weir, Birmingham, for appellees Ralph J. Maddox et al.

McCALL, Justice.

The parties in this case are all of the separate owners of the several lots of land, composing Roebuck Court Subdivision, Birmingham, Alabama. The lots of the appellants, who were complainants in the trial court, of the appellee, Faith Evangelical Lutheran Church, and of the appellees, Early, constitute all of the lots in Roebuck Court that are situated north of United States Interstate 59, referred to as I–59 hereafter. It traverses the subdivision eastward and westward. The appellees, other than the appellees, Faith Evangelical Lutheran Church and Early, own the remaining lots in the subdivision, and their lots are located south of I–59.

The suit was filed to have the equity court relieve those lots north of I–59 from the restrictive covenants which the onetime landowner, Roebuck Springs Land Company, Inc., imposed on all lots in Roebuck Court, when it dedicated and recorded a plat of the property in 1925. These covenants, among other things, restrict the use of the lots for residence purposes only, with not more than one dwelling house and necessary servant houses, garages and other outhouses to be built on a lot. The covenants expressly provide that no business house, double house or apartment house of any kind whatsoever shall be built on a lot. There also is a provision that the grantees agree to conform to the conditions, limitations, and restrictions, which attach to and run with the land, until the owners of four-fifths of all of the lots in the survey agree in writing to free the lots from them. Roebuck Court has been developed as a restricted single family residential neighborhood. With the exception of the Faith Evangelical Lutheran Church, no structures other than those permitted by the restrictive covenants exist on any lot.

Interstate 59 will be elevated to a height of eighteen to twenty feet above ground level. It will utilize a right of way approximately 300 feet wide which will accommodate six lanes of interstate and local motor vehicular traffic. The lots on its south are located along streets and drives in the subdivision. Red Oak Road, which is a street in the subdivision, has no access to I–59, but will pass under it and will afford subdivision residents, and others traveling along it, a way of ingress and egress to and from U. S. Highway 11 (called U. S. 11), with which it intersects. This highway also runs eastward and westward, and bounds Roebuck Court on the north. The appellants', the church's and the Earlys' lots are located in the subdivision between I–59 and U. S. 11, and are adjacent to U. S. 11. North of U. S. 11 is a municipal golf course. U. S. 11 is a heavily traveled five lane thoroughfare that also serves residents and those coming to this eastern section of Birmingham as a main arterial highway leading to downtown Birmingham. Center Point and Huffman have commercial districts east of the Roebuck Court Subdivision. Immediately to the west of the subdivision is Division Avenue. Across it are some businesses in that block, but there are none immediately across U. S. 11 from the subdivision, where the golf course is located. Fourth Avenue South, which runs east and west, is to the south of the subdivision and is a frequently traveled street leading to and from the business district of downtown Birmingham. There are limited interchanges for traffic to enter and leave I–59 at both the eastern and western areas of the subdivision.

Essentially, the appellants aver that, since the imposition of the restrictions, the nature and character of the neighborhood, in the area in which their lots, that of the church, and that of the Earlys are located, has undergone substantial and progressive change, that the restrictions impose an undue burden on their particular lots, which is inequitable and oppressive, that the lots are no longer suitable for single family residential purposes, and that, because of the location of I–59, the lots are more suitable for business and commercial development than for residential purposes.

The relief prayed for is that the restrictions be adjudged and decreed invalid or unenforceable against the property of the appellants, the appellees Early, and Faith Evangelical Lutheran Church, or any part of it because of the changes in the nature and character of the neighborhood since the location of I–59 through the Roebuck Court Subdivision. The bill prays also for general relief.

Since I–59 separates the lots to its north from those of the appellees to its south, the appellants contend that this, together with the heavy flow of traffic along U. S. 11 and the development of commercial districts close-by have caused the neighborhood to lose its identity as a restricted residential subdivision.

The opposition to removing the restrictions is that commercial activity has not invaded Roebuck Court and such always has been resisted because it will greatly diminish the desirability of the subdivision as a residential area, depreciate the value of their homes, and create discomfort in their occupancy and use. The appellees contend that development of the subdivision bordering U. S. 11 on the south as a commercial district will result in more traffic congestion on that highway in the area, as well as on the streets in the subdivision. They further contend that the removal of the restrictions will bring on offensive conditions such as disagreeable noises, noxious fumes and crowds of people patronizing the businesses, all of which will render their adjacent homes less desirable and less enjoyable as residences.

There are a total of thirty-two houses in the subdivision. They are far above average in architectural design and outward appearance. They are attractive and are substantial. Spacious lawns abound the homes which are neatly kept in settings of flowers, shrubs and trees. From colored photographs received in evidence, both the homes and surrounding yards denote interest and care by the occupants in their upkeep. Some of the residents have occupied their homes for twenty years or more. Others have since bought in the subdivision because it was residential.

The physical outlay of existing streets in the subdivision and the bounding arterial thoroughfares remains the same as before the advent of I–59, with residents having the same means and convenience of access to them. The completion of I–59 will not change or interfere with this facility, nor will it, of itself, increase traffic flow over these existing ways in that vicinity, but will rather relieve any congestion in the area by hastening the movement of motorists over its six lanes of highway.

After hearing a volume of oral testimony in open court from witnesses on each side of the issue, the trial court found and decreed that the appellants had failed to meet the burden of proof required of them and that they were not entitled to the relief prayed for.

■ The restrictive covenants, imposed upon the dedication and recording of the plat of survey, recite that they are covenants running with the land. In consequence, they are mutually binding on the purchasers of lots in the subdivision. McMahon v. Williams, 79 Ala. 288; Morris & Morris v. Tuskaloosa Manufacturing Co., 83 Ala. 565, 3 So. 689; Webb v. Jones, 163 Ala. 637, 50 So. 887; Pugh v. Whittle, 240 Ala. 503, 199 So. 851; Allen v. Axford, 285 Ala. 251, 231 So.2d 122.

Clearly, a building program was implemented by the original landowner, and the restrictive covenants made it an inducement to purchase lots in the subdivision. The appellants and appellees hold deeds containing the restrictive covenants. The validity of their existence is not disputed. In Scheuer v. Britt, 217 Ala. 196, 115 So. 237, the court stated:

"* * * [W]here a defined district is platted and publicly offered as a restricted district, the restrictive clauses in the several deeds are construed as mutual covenants, each lot subject to a servitude or easement in favor of all the others, including unsold lots of the grantor in the same plat. Such servitude being appurtenant to and running with the land, any subsequent purchaser of a lot within the plat, with notice of the easement thereon, takes it subject thereto, as between himself and other lot owners, although no restriction is incorporated in his deed." See also Scheuer v. Britt, 218 Ala. 270, 118 So. 658; Marsh v. Cheeseman, 221 Ala. 390, 128 So. 796; Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451; Allen v. Axford, 285 Ala. 251, 231 So.2d 122 and numerous authorities stated in these cases.

The appellants assign as error:

(1) The refusal to remove the restrictive covenants insofar as they apply to the property of the appellants; and

(2) The refusal to annul the restrictive covenants described in the bill of complaint.

■ The second assignment must fail because the bill does not purpose to free the entire subdivision from the restrictive covenants, but only the lots north of I–59. Therefore we are only concerned with the first assignment.

In citing the case of Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483, the appellants argue that because restrictions on the use of land are not favored in the law and are therefore to be strictly construed against the enforcement thereof, the burden was not on the appellants to prove justification for having the restrictions removed, but was on the appellees to show to the satisfaction of the trial court that the maintenance and continuation of the restrictions are neither onerous, oppressive or unjust, and that it would be detrimental to them (the appellees) for the restrictions to be removed.

■ The rule alluded to in Bear v. Bernstein, supra, is not a rule of procedure, but a rule of construction to be applied where the restrictive covenant, by reason of the language employed, is unclear, ambiguous and doubtful of meaning. It is a rule of construction to be relied on when the court is unable to gather from the language of the instrument itself, the true intent of the parties concerned. The rule has no application where there is no reason for construction, as where the language of the restriction is clear and unambiguous. The rule applicable here is stated in Centers, Inc. v. Gilliland, 285 Ala. 593, 234 So.2d 883:

"* * * While such provisions in deeds are not construed to create restric-

tions beyond the fair and natural meaning of the words used, read in the light of the circumstances under which they were used, they will be enforced according to their fair and natural meaning, in the absence of fraud or mutual mistake. * * *"

In Wahrendorff v. Moore, 93 So.2d 720 (Fla.1957), the court said:

"It is true * * * that the law favors the free use of real estate and restrictions on usage will customarily be strictly construed. Nevertheless, such restrictive covenants are valid and will be recognized and enforced when established by contract between the parties involved. * * *"

In our case of Springdale Gayfer's Store Co., Inc. v. D. H. Holmes Co., Ltd., 281 Ala. 267, 277, 201 So.2d 855, 865, we said:

"We do not think that the 1958 agreement is ambiguous. If it were, it would be subject to the rule that restrictions against the free use and enjoyment of property are not favored in the law, and, being in derogation of such right, are to be strictly construed against the enforcement of the restriction. Where the language of the restriction is clear and unambiguous, it will be given its manifest meaning, but its construction will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against the party seeking enforcement. Bear v. Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 14 A.L.R.2d 1372."

■ In the above cases the court had in mind a rule of construction where the language in the restriction was of doubtful meaning and ambiguous. In this case, unlike the situation in *Bernstein,* supra, there is no ambiguity in the language of the restrictive covenants. Since there is no room for construction, the rule is not applicable, and the language of the restriction is entitled to be given the effect of its

plain and manifest meaning. Springdale Gayfer's Store Co., Inc., supra.

As we say, in one instance a rule of construction of an instrument confronts us, in the other, a rule of procedure as to the burden of proof. A collation between the two, we are unable to reconcile; rather, on the other hand, we recognize a distinction.

■ The appellants recognize the existence of the restrictive covenants. They assert however that because of the change of conditions in the neighborhood the restriction is either no longer in force, or should be removed. We think that the burden of proving such allegations rests upon the appellants. Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423; Hicks v. Biddle, 218 Ala. 2, 117 So. 688. The appellants hold the affirmative of this issue, because the appellees have denied that there is just cause for removing the restriction.

The solicitor for the appellants has made succinct and clear arguments in support of his several points as to why the restrictions should be removed. While we are unable to agree with these, the issues raised are entitled to be answered. The appellants contend that the value of their residences has been greatly depreciated by the increase in traffic over U. S. 11 which either is contiguous or adjacent to the lots involved, the traffic having multiplied ten times over the past twenty years. Allen v. Axford, 285 Ala. 251, 231 So.2d 122, holds that this change in the character of the neighborhood raises a question of fact under conflicting testimony as to the impact of the traffic as well as to whether or not others in the subdivision would be damaged by the lifting of the restrictions. The final decree as to the question is presumed to be correct, and will not be set aside unless palpably and plainly erroneous.

■ The appellants also argue that the restrictions make their property practically worthless to the owner. It must be remembered, however, that the appellants bought their property with full knowledge of the restrictive covenants imposed upon it. The court took note of this in Pugh v. Whittle, 240 Ala. 503, 506, 199 So. 851, and Centers, Inc. v. Gilliland, 285 Ala. 593, 596, 234 So.2d 883. Moreover the effect of the restrictions upon the value of all the property in the subdivision must also be considered. There was testimony that removal of the restrictions from appellants' property would depreciate the appellees' property. See St. Lo Construction Co., Inc., v. Koenigsberger, 174 F.2d 25, 84 App.D.C. 319, 10 A.L.R.2d 349. Appellants insist that their property should be put to its highest and best use, which is commercial, so as to enable them to realize its greatest value. This is answered in Marsh v. Cheeseman, 221 Ala. 390, 392, 128 So. 796, 798, where it is said:

"Courts should and do give no countenance to the invasion of the property rights of others merely because it is more profitable to do so. Hence, the evidence of the comparative value of lot 96 for business and residential purposes at this time is given no weight."

We think whether it be a zoning ordinance or restrictive covenant involved, the same principle of law pertains so that what is said in Marshall v. City of Mobile, 250 Ala. 646, 649, 35 So.2d 553, 555, is pertinent here:

"In Leary v. Adams, supra [226 Ala. 472, 147 So. 391], we recognized the strong appeal from the standpoint of financial loss occasioned by the restriction imposed by the ordinance there in question. We answered the argument by following a statement of the North Carolina court in City of Elizabeth City v. Aydlett, 201 N.C. 602, 161 S.E. 78, to the effect that financial loss is not the test. * * *"

■ Construction of I–59 may separate one part of the subdivision from another area, it may detract from the aesthetic appearance of some lots within the subdivision, and it may depress the value of some lots, but it does not neutralize the essential

purpose of the restrictions, because the subdivision remains utilized exclusively for residential purposes. Residential benefits to property owners remain unimpaired. In and of itself, the Interstate does not defeat the purpose of the restrictions.

In Thompson on Real Property, 1962 Replacement (1972 Supplement), § 3174, p. 20, we find the following statement which we think is appropriate to the issue at hand. There it is said:

"A change in character of the neighborhood sufficient to defeat a restrictive covenant must have been so great as to clearly neutralize the benefits of the restriction to the point of defeating the object and purpose of the covenant." Metropolitan Inv. Co. v. Sine, 14 Utah 2d 36, 376 P.2d 940; Wallace v. St. Clair, 147 W.Va. 377, 127 S.E.2d 742.

That condition was not found to have resulted here.

The following observation was made by this court in Centers, Inc. v. Gilliland, 285 Ala. 593, 596, 234 So.2d 883:

"* * * Since the original purposes of the covenants can be effectuated, we think that changes outside of the restricted area should not be allowed to defeat the purposes of the restriction. [See Chuba v. Glasgow, 61 N.M. 302, 299 P.2d 774; Morgan v. Matheson, 362 Mich. 535, 107 N.W.2d 825; Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943].

"The trial court heard the evidence ore tenus and the finding of facts and the decree of the trial court in such cases will not be disturbed on appeal unless palpably and plainly wrong. Howard v. Harrell, 275 Ala. 454, 156 So.2d 140; Meador v. Meador, 255 Ala. 688, 53 So. 2d 546."

In Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, the court said:

"A court may not refuse to enforce a residential-only restriction against a particular lot on the sole ground that a change of conditions has rendered the lot unsuitable for residential·purposes and it would therefore be inequitable to enforce it. The equities favoring the particular owner is only one facet of the judicial inquiry. Those equities must be weighed against the equities favoring the lot owners who, having acquired their property on the strength of the restriction, wish to preserve the residential character of the area. The judgment must arise out of a balancing of equities or of relative hardships. * * *

"* * * [T]he majority view is that 'if the benefits of the original plan for a restricted subdivision can still be realized for the protection of the interior lots, the restriction should be enforced against the border lots, notwithstanding that such lot owners are deprived of the most valuable use of their lots.' 2 American Law of Property 447. * * *"

The following comment from "Editorial Analysis and Summary" 4 A.L.R.2d 1115 is of assistance:

"* * * The apparent weight of authority supports the proposition that the fact that a small portion of a restricted district, lying along the edge or at the threshold thereof, is forced to bear the brunt of attack from changed conditions outside the district, with resultant impairment in value for the use prescribed by the restrictions, does not justify abatement of the restrictions as to the part so affected because of the hardship visited upon that particular land as compared with the sheltered portion of the district. * * *"

In our opinion both the degree and the effect of the changes within the subdivision and the area thereabout, weighed against the accomplished and intended purposes of the restrictions, the balancing of the equities between the opposing parties, and the weight and credibility to be given the conflicting testimony of witnesses made the issues legitimate questions for

234

the chancellor to consider and decide. He has decided that the appellants failed to meet the burden of proof required of them. This burden was to reasonably satisfy him by the evidence that they were entitled to have the restrictions removed. We have read the transcript of testimony and the condensed recital of the evidence in the appellants' brief. The chancellor's conclusion and final decree are not plainly and palpably wrong under the evidence.

■ A presumption of correctness therefore attends the determination made by him and we will not disturb his conclusion unless it is plainly erroneous and contrary to the weight of the evidence, which we have already said, we do not find to be the case. The decree must be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.