Thomas E. **BOYLE** and **Evelyn Boyle, Plaintiffs,**

v.

**LAKE FOREST PROPERTY OWNERS ASSOCIATION, INC., et al., Defendants.**

**Civ. A. No. 81–0068–H.**

United States District Court, S. D. Alabama, S. D.

April 30, 1982.

William S. Poole, Jr., Demopolis, Ala., for plaintiffs.

Broox G. Holmes, M. Kathleen Miller, Robert S. Edington, Mobile, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAND, Chief Judge.

1. Plaintiffs, Thomas E. Boyle and Evelyn Boyle, are residents of Metairie, Louisiana.

2. Defendant Lake Forest Property Owners Association, Inc. is an Alabama not-for-profit corporation which is incorporated in the State of Alabama and is authorized to do business in the State of Alabama with its principal place of business in Baldwin County, Alabama.

3. Defendant Lake Forest, Inc. is a corporation which is incorporated in the State of Alabama and is authorized to do business in the State of Alabama with its principal place of business in Baldwin County, Alabama.

4. Defendant Lake Forest Management Corporation is a corporation which is incorporated in the State of Alabama and is authorized to do business in the State of Alabama with its principal place of business in Baldwin County, Alabama.

5. Lake Forest, Inc. operates a resort land development project located entirely in Baldwin County, Alabama. As part of its resort land development project, Lake Forest, Inc. initiated, caused to be constructed and supervised the construction of the sewer system, water system, roads and recreational facilities, including the Country Club clubhouse, golf course, tennis courts and marina in the Lake Forest Development. Prior to February 2, 1979, Lake Forest, Inc. managed these recreational facilities and maintained the common property of the development.

6. Plaintiffs Thomas E. and Evelyn Boyle purchased real property in the Development of Defendant Lake Forest, Inc. on July 13, 1977, from Hannon S. Hairston and Mary H. Hairston.

7. The deed to said real property referenced certain restrictive covenants, recorded in the Probate Judge's Office of Baldwin County, Alabama, State of Alabama. Article XIII of these restrictive covenants provides that a purchaser of a lot or lots in the subdivision, by acceptance of a deed to the lot or the assignment of a contract or by entering into an agreement to purchase the lot whether from declarant Lake Forest, Inc. or a subsequent owner, binds himself, his heirs, personal representatives and assigns to pay all such charges and assessments as are determined and levied upon such a lot.

8. There are approximately 3600 lot owners in the Lake Forest Subdivision and every deed refers to said restrictive covenants. Of the approximately 3600 lots sold, there are approximately 800 lot owners who have residences on their lots and about 2700 lots which have no houses. Lake Forest, Inc. retains title to approximately 600 lots which have not been sold.

9. Plaintiffs learned of Lake Forest Subdivision from personal friends who are residents of said Subdivision. Prior to the purchase of their lot, Plaintiffs viewed certain of the facilities including the golf course, Yacht Club and Country Club, which are now maintained by the Lake Forest Property Owners Association.

10. Plaintiffs were aware of said restrictive covenants at the time of the purchase of their lot. Plaintiffs were advised both by their friends who resided in the subdivision and by the real estate agent who sold the lot that by purchasing the lot they would be obligated to be members of and pay dues to the Lake Forest Property Owners Association. Plaintiffs also received a letter dated June 1, 1977 from the real estate agent which noted the obligation to pay said dues.

11. In addition to Plaintiffs' deed specifically referencing said covenants, the title insurance policy on Plaintiffs' property referenced the covenants.

12. The Plaintiffs purchased the lot for investment purposes and no house or residence has ever been constructed on their lot.

13. Plaintiffs viewed the facilities of the development and believed that said facilities made the purchase of the real property in question a better investment.

14. Other owners of lots in Lake Forest development purchased their property in reliance on the continued existence of the restrictive covenants and believe that the restrictive covenants enhance the value of their property.

15. At the time the original Developer of the subdivision agreed to sell the common facilities to the Property Owners Association in December of 1978, the members of the Association were notified of this option and were informed that it was planned that the purchase price would be raised by levying a $250.00 purchase assessment against each lot.

16. Plaintiffs voted by proxy in favor of the acquisition of said facilities.

17. Approximately 2600 members of the Defendant Lake Forest Property Owners Association, Inc. paid or are paying $250.00 per lot as the purchase assessment to purchase the recreational facilities and other common areas from Diamondhead Corporation.

18. By letter dated March 29, 1979, the Plaintiff, Thomas E. Boyle, conveyed his desire to withdraw from membership in Lake Forest Property Owners Association, Inc. to Mr. Bridges, then President of Lake Forest Property Owners Association, Inc. This request was denied.

19. The Defendant Lake Forest Property Owners Association, Inc. acquired from Lake Forest, Inc. and now owns real property and facilities in Baldwin County, Alabama, consisting of all the recreational facilities at Lake Forest, including the 27-hole golf course, the Yacht and Country Clubs, the rec centers, the swim and racquet club, riding stables and lake.

20. Lake Forest Property Owners Association, Inc. purchased the above described facilities from Lake Forest, Inc. on February 2, 1979 for $1,169,200.00.

21. Effective on February 2, 1979, Lake Forest Property Owners Association, Inc. leased the exclusive use of said facilities to Lake Forest Management Corporation, a subsidiary of Club Corporation of America.

22. Also effective February 2, 1979, Lake Forest Property Owners Association, Inc. contracted for Lake Forest Management Corporation to manage and oversee the maintenance of the recreational facilities and real and personal property referred to above and to provide guard and security service. A provision of the management agreement requires the enforcement by Lake Forest Property Owners Association, Inc. of the restrictive covenants.

23. Members of the Defendant Lake Forest Property Owners Association, Inc. are allowed to use the facilities of other Club Corporation of America clubs around the United States and, also, members of other Club Corporation of America operations around the United States can use the facilities of Lake Forest Property Owners Association, Inc.

24. Lake Forest, Inc. is a wholly owned subsidiary of Purcell Company, Inc., which operates resort land developments in 8 other states. Members of Lake Forest Property Owners Association, Inc. have the same reciprocal rights and privileges with other recreational facilities of the Purcell Company.

25. Lake Forest Management Corporation collects the dues and assessments for the Defendant Lake Forest Property Owners Association, Inc.

26. The restrictive covenants contained by reference in that certain Deed from Hannon S. Hairston and Mary H. Hairston to the Plaintiffs, T. E. Boyle and Evelyn B. Boyle, and most especially Article XIII thereof, which require the payment of such dues and assessments as may be levied by the Lake Forest Property Owners Association, Inc. and which require, (with certain exceptions), membership in the Lake Forest Yacht and Country Club, are not arbitrary and capricious, are reasonably related to the property and its use, and touch and concern the property, in that the provisions thereof enhance the value of the various individual lots in the Lake Forest Subdivision, constitute a part of a common plan or scheme of development of the subject subdivision and grant rights of use of the

common facilities to the Grantees. Such use rights constitute a benefit to the Grantees and impose a reasonable burden on the subject real property. The parties intended to charge said land with this burden, as evidenced by the subject covenants. Said covenants create for their enforcement a charge or lien upon the subject real property. These restrictive covenants constitute covenants running with the land which may be enforced by Lake Forest Property Owners Association, Inc., which itself is the owner of the common facilities which constitute all or a substantial portion of that part of the dominant land for the benefit of which the covenants were created. Said covenants may be enforced against Plaintiffs as said Plaintiffs had both actual and constructive notice of said covenants at the time of purchase.

27. The dues set and collected by Defendant Lake Forest Property Owners Association, Inc. are used, among other things, to maintain and repair the common facilities, including the marina, the boat channel, the tennis courts, the swimming pools, the golf course and the entranceways, to maintain the appearance of the rights-of-way of the Lake Forest Subdivision, to provide security service for the residents of Lake Forest, to promote the civic betterment of Lake Forest and to pay property taxes and to retire debt.

28. The payment of dues and the payment of the $250.00 purchase assessment by the Grantees of lots in Lake Forest are necessary to the financial stability of the Subdivision, in that the Defendant Lake Forest Property Owners Association, Inc. in February, 1979 borrowed $1,100,000.00 from Home Savings & Loan Association of Mobile, and mortgaged its real property and the revenues of the Lake Forest Property Owners Association, Inc. for the repayment of said loan on an installment basis. The mortgage instrument is of record in Baldwin County. To further protect the security of Home Savings & Loan Association, the right to collect dues and assess liens, in the event of a default by Lake Forest Property Owners Association, Inc. was assigned to Home Savings & Loan Association, and such mortgage and assignment is still in force and effect.

## CONCLUSIONS OF LAW

1. The Restrictive Covenants referred to in the Deed to the real property purchased by the Plaintiffs and the provisions of the By-laws of the Defendant Lake Forest Property Owners Association, Inc. are valid under the laws of the State of Alabama. Plaintiffs, who had actual notice of said covenants, may not now complain of their existence. *Kessler v. Stough*, 361 So.2d 1048, 1051 (Ala.1978); *Buckalew v. Niehuss*, 249 Ala. 585, 32 So.2d 299 (1975).

2. When a landowner accepts a Deed with actual or constructive notice of the provisions in the declaration of restrictions pertaining to the subdivision in which his lot is located which by its terms imposes a lien on the property for payment of the recreational assessment fee, that act manifests the intent to let the property stand as security for the obligation. At the same time the act creates a valid contractual lien. *Bessemer v. Gersten*, 381 So.2d 1344 (Fla. 1980).

3. A Developer, when he is carrying out a uniform plan of development for a residential subdivision may arrange for provision of certain services to the subdivision and for the maintenance of the facilities devoted to common use, and may bind the lot purchasers in that subdivision to pay for these items. *Bessemer v. Gersten*, ibid.

4. The encumbrance imposed by that Developer on the lots in a subdivision which requires the payment of a recreational assessment fee creates an affirmative covenant running with the land. *Bessemer v. Gersten*, ibid.

5. Said covenants in said recorded Deed to the subject lot in the Lake Forest real estate development bind the initial Grantee, his successors and assigns, to pay to the initial Grantor, its successors and assigns, certain fixed sums of money to be devoted to the maintenance of the roadways, public areas, marina, recreational fa-

**770**

cilities and other improvements located in the Lake Forest Subdivision. To secure the payment of said sums, there shall be a charge or lien upon the property. The Plaintiffs, as Grantees, obtained not only title to the particular lot but also a right of common enjoyment with other property owners in the common facilities and the improvements located on same. Consequently, said covenant touches or concerns the land and constitutes an affirmative covenant running with the land. *Neponsit Property Owners Association v. Emigrant Industrial Savings Bank,* 278 N.Y. 248, 15 N.E.2d 793, reargued den. 278 N.Y.2d 704, 16 N.E.2d 852, 118 A.L.R. 973; *Mendrop v. Harrell,* 233 Miss. 679, 103 So.2d 418, 68 A.L.R.2d 1013; *Buckalew v. Niehuss, supra; Water Works and Sanitary Sewer Board v. Campbell,* 267 Ala. 561, 103 So.2d 165 (1958); *Thompson on Real Property,* § 3153.

 6. When there is no ambiguity in the language of a restrictive covenant the language of the restriction is entitled to be given the effect of its plain and manifest meaning. *Laney v. Early,* 292 Ala. 227, 292 So.2d 103, 107 (1974). The restrictive covenants referenced in Plaintiffs' deed are not ambiguous, and expressly state the intent of the Declarant, Lake Forest, Inc., that they run with the land and should therefore be enforced as written.

7. The burden of proving that restrictions contained in covenants are either unlawful or unreasonable and therefore should be removed rests upon those seeking to remove the restrictions. *Laney v. Early, supra,* 292 So.2d at 107.

8. In determining whether restrictive covenants should be set aside, the effect of the restrictions upon the value of all property subject to the covenant must be considered, *Laney v. Early, supra,* at 107–108. The existence of restrictive covenants enhances the value of the other property in Lake Forest Development and the value of the other property would be diminished if said covenants were set aside.

9. The Restrictive Covenants contained in the deed to the real property purchased by Plaintiffs and the provisions of the by-laws of the defendant, Lake Forest Property Owners' Association, Inc., are neither unlawful nor unreasonable and constitute a permanent servitude beneficial to the owner of the land whoever it might be, reasonably relate to the property, are legally justified and concern the property. *Little v. Hunter,* 289 Ala. 6, 265 So.2d 441 (1972).

This Court having made its findings of fact and conclusions of law herein, it is therefore;

ORDERED, ADJUDGED and DECREED that the Plaintiffs' claims be dismissed on the merits. Each side is to bear its own costs.