Plaintiff, Sports World, Inc., appeals from the Houston County Circuit Court's order denying a preliminary injunction to prevent Neil's Sporting Goods, Inc., from operating a full-line sporting goods store in the Northside Mall in Dothan, Alabama. We affirm.
In 1973, Charles Heath, vice-president of Sports World, Inc., contacted Julian Turner, president of Northside Realty, Inc., the corporation that owned the Northside Mall, in an attempt to lease space in the mall to operate its sporting goods store. During the negotiations, Heath and Turner entered into an oral agreement whereby Northside Realty agreed not to lease space in the mall to any other full-line sporting goods store. Heath executed a 15-year lease with Northside Realty on May 29, 1973.
In 1980, Turner proposed to Heath that Sports World expand its store to include an additional 1,125 square feet of space located adjacent to its then-existing store. Heath told Turner that he would not be interested in leasing the additional space unless Turner again promised not to lease space in the mall to any other full-line sporting goods store. Turner orally reaffirmed his original agreement, and Heath signed a new ten-year lease which included the additional space but did not incorporate the oral promise.
On January 6, 1981, Northside Realty sold the mall to Prudential Life Insurance Company ("Prudential Life"). Early in 1984, Heath discovered that one of the other tenants in the mall, "Below the Knee," was planning to expand its business to become a full-line sporting goods store. Heath contacted Turner and requested that he make the new owners of the mall aware of the oral agreement between them. Turner notified Prudential Life by letter dated February 23, 1984. Nothing further was done at that time, as "Below the Knee" never became a full-line sporting goods store.
In September 1985, Prudential Life leased space in the mall to Neil's Sporting Goods, a full-line sporting goods store. As a result, Sports World filed its complaint for injunctive relief against Neil's Sporting Goods, Inc., Goodman-Seger-Hogan, Inc. (the managing agents of Prudential Life), and Prudential Life. The complaint was filed on October 18, 1985. On October 28, 1985, the court notified the parties that a hearing on the application for issuance of a preliminary injunction would be held three days later. After the hearing, the court gave the parties two weeks to submit short memoranda of law. On November 19, 1985, the court entered an order denying the preliminary injunction. Sports World then filed a motion for reconsideration, which the court denied, and this appeal followed.
The judgment of the trial court must be, affirmed for several reasons. First, it is clear to this Court that the trial court had before it ample evidence that Prudential Life purchased the mall without any notice of the oral agreement between Sports World and Northside Realty. The purchase and sale contract between Prudential Life and Northside Realty defines "Permitted Encumbrances" as "liens, encumbrances, restrictions, exceptions and other matters referenced in Exhibit E hereto." There is no reference in Exhibit E to any oral agreement between Sports World *Page 482 
and Northside Realty. In addition, the contract provides:
 The Seller shall convey and transfer to Purchaser good, indefeasible and marketable title . . . subject, however, to the Permitted Encumbrances, and without exception as to Survey or mechanics' or similar liens, free and clear of any and all mortgages, pledges, liens, conditional sales, encumbrances, ground rents, leases, tenancies, parties in possession, licenses, security interests, covenants, conditions, restrictions, rights-of-way, easements, encroachments and any agreements, contracts, rights, acts, charges or other matters of any nature affecting the title, except as permitted in this Agreement.
Sports World was also required by Prudential Life to sign a "certificate of tenants" form, the pertinent portions of which provided:
 2. That the Lease, as of the date hereof, is in full force and effect, and, except as specifically set forth below, has not been modified or amended in any respect whatsoever, and constitutes a complete agreement between Lessor and Lessee with respect to the use or occupancy of the Premises.
 3. That, except as specifically set forth below, Lessee asserts no claim of default, offset, defense or counterclaim to the payment of rent and other charges payable by Lessee pursuant to the lease and asserts no claim against Lessor in regard to any obligation of Lessor relating to Lessee's Premises.
At the end of the form there was space provided for any amendments or modifications, but none was included.
There is nothing in any of the writings concerning the sale of the mall that suggests that Prudential Life had any knowledge of the oral agreement between Sports World and Northside Realty before it purchased the mall. Rather, according to the provisions of the contract and the "certificate of tenants" form, Prudential Life had been assured that there was no agreement of any kind, other than what was evidenced by these two documents, between Sports World and Northside Realty. Moreover, it appears from the evidence that the first time that Prudential Life was made aware that an oral agreement existed between Sports World and Northside Realty was when it received a letter from Julian Turner, dated February 23, 1984, more than three years after Prudential Life's purchase of the mall property.
Sports World argues that there is language in the contract that would make the oral agreement a covenant running with the land and, therefore, one which Prudential Life would be bound to honor. We disagree.
First, it is undisputed that the agreement was oral. If the agreement had been intended to constitute a permanent restriction on the use of the property, then it should have been put in writing. In Carter v. Stringfellow, 293 Ala. 525,306 So.2d 273 (1975), this Court stated:
 Any such representation concerning an interest in land is ordinarily deemed to be covered by our Statute of Frauds. (Title 20, § 3, Code of Alabama 1940 [§ 8-9-2, Code 1975]).
 It has been held by this court that an easement is an interest in land and cannot be created by parol. [Citations omitted.] Restrictions on the use of land are also subject to the Statute of Frauds. Marsh v. Cheeseman, 221 Ala. 390, 128 So. 796 [1930]. As was stated by this court in Marsh v. Cheeseman, supra, [221 Ala. at 392,] 128 So. p. 798:
 "A permanent easement or incumbrance on lands must rest on something more enduring than the memory of witnesses."
293 Ala. at 528, 306 So.2d at 275.
Furthermore, courts of this State have followed the longstanding rule regarding the enforceability of such covenants against a subsequent purchaser of the property. That rule is stated in Annot., 97 A.L.R.2d 5, 12 (1964):
 The right of the covenantee to enforce the covenant against one other than the covenantor is subject to little, if any, doubt, in its main areas. The covenant, of course, is not enforceable against one *Page 483 
other than the covenantor if the parties indicate an intention to that effect. Irrespective of intention, the covenant is not enforceable as against a prior lessee acting in accordance with the terms of his prior lease, nor is it enforceable as against a subsequent lessee acting in accordance with the terms of his subsequent lease where such subsequent lessee had no notice, either actual or constructive, of the restriction imposed upon the lessor's premises under the covenant. Neither is the covenant enforceable as against a subsequent purchaser of the restricted premises where such purchaser had no notice, either actual or constructive, of the restriction imposed upon the purchased property. [Emphasis added.]
Alternatively, if the agreement was between the two original parties only, then it obviously would not be binding upon Prudential Life.
Another reason why the injunction was properly denied is that Sports World executed a "certificate of tenants" form, which in no wise suggested the existence of any agreement other than what was before the parties in writing. Sports World had ample opportunity to put something in writing concerning the agreement, but, for whatever reason, chose not to do so. Sports World cannot now complain about a situation that it could have prevented had it acted properly.
In its reply brief, Sports World argues that a violation of the Statute of Frauds and the rights or status of a bona fide purchaser for value and without notice are affirmative defenses that are deemed to be waived by a defendant unless specifically pleaded. In an ordinary case, where both sides are given the opportunity to develop discovery within the normal time limitations, we agree. This suit, however, is forextraordinary relief, namely, an injunction. In such a case, the parties are operating under stricter time restraints than usual. In the case sub judice, the complaint was filed on October 18, 1985. Ten days later, before defendants were able to file an answer, the court set a hearing for three days later, on October 31, 1985. It would be unfair and unjustified for this Court to hold that these two affirmative defenses were waived by the defendants because they were not specifically pleaded during the short time period allowed in this case, when, according to Rule 12(a), Alabama Rules of Civil Procedure, a defendant normally has thirty days in which to respond to a complaint.
For all of the above-stated reasons, the judgment of the lower court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.