688 So.2d 823 (1996)
BOARD OF ZONING ADJUSTMENT OF THE CITY OF MOBILE
v.
DAUPHIN UPHAM JOINT VENTURE, a partnership; Robert J. Crow; Everett Wilkinson; and Robert Cordasco.
2950507.
Court of Civil Appeals of Alabama.
December 6, 1996.
Rehearing Denied January 17, 1997.
John L. Lawler of Finkbohner & Lawler, L.L.C., Mobile, for Appellant.
J. Patrick Courtney III and S. Wesley Pipes of Lyons, Pipes & Cook, P.C., Mobile, for Appellees.
CRAWLEY, Judge.
The Board of Zoning Adjustment of the City of Mobile ("the Board") appeals from a *824 circuit court judgment granting a use variance to Dauphin Upham Joint Venture ("the joint venture"). We reverse.
The members of the joint venture are Robert J. Crow, Everett Wilkinson, and Robert Cordasco, who are partners in the accounting firm of Crow, Wilkinson and Cordasco. In 1995, the joint venture applied to the Board for a use variance to operate a satellite office for its accounting firm in a house across the street from its main office. The house is a one-and-one-half story, white frame structure surrounded by a white picket fence, in an area zoned for residential use. The Board denied the application, and the joint venture appealed the Board's decision to the circuit court. The circuit court determined that "due to special conditions, the literal enforcement of the City of Mobile's Zoning Ordinance will result in unnecessary hardship." The court granted the variance, subject to the following conditions:
"1. There shall be no parking on site.
"2. Parking for the accountants' offices shall be provided at 2062 Dauphin Street at Plaintiffs' main offices, for which the variance sought is hereby granted.
"3. The residential character of the exterior of the house on the property shall remain and be maintained and have the appearance of a residence.
"4. There shall be no signage indicating the operation of the accountants' offices.
"5. If the structure is no longer used by Plaintiffs as an accounting office in conformity with the conditions imposed, the variance shall expire and the use of the property revert to residential.
"6. Landscaping shall be provided within ninety (90) days after final judgment with the landscaping plans presented by Plaintiffs at the trial of this cause."
Upham Street in Mobile begins at Dauphin Street, a major east-west thoroughfare, and runs north. The property in question is located on the west corner of the intersection of Upham and Dauphin Streets, facing Dauphin Street. The joint venture's accounting office is located across Upham Street on the east corner of the same intersection, also facing Dauphin Street. All the lots on Dauphin Street for five or six blocks west of Upham Street are zoned for residential use. All the lots on Dauphin Street for two blocks east of Upham Street are zoned for business use.
In 1994, the joint venture purchased a vacant lot immediately to the east of its accounting office with the expectation of using the lot for office expansion. The lot was already zoned for business use, so no application for a variance was necessary. The joint venture abandoned the idea of expansion on the lot, however, when it decided that the cost was prohibitive.
On June 21, 1995, the joint venture purchased the property in question, knowing that it was zoned for residential use and planning to apply for a variance. At the time of its purchase by the joint venture, the property had been on the market for about six months. Before that, the house on the premises had been continually occupied as a residence for 20 years or more. The joint venture renovated the house by painting and rewiring it and by installing an alarm system.

Standard of Review
This court has previously stated that, in a proceeding seeking a use variance, whether an "unnecessary hardship" exists is a question of fact. See Board of Adjustment of the City of Mobile v. Murphy, 591 So.2d 505, 507 (Ala.Civ.App.1991); Board of Adjustment of the City of Mobile v. Pierce, 512 So.2d 107, 108 (Ala.Civ.App.1987). However, in Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994), the Alabama Supreme Court held that a trial court's determination as to the issue of "unnecessary hardship" is entitled to no deference on appeal, because that issue "requires an application of law to the facts." 636 So.2d at 417. We therefore review the trial court's conclusions in this case without a presumption of correctness.

Unnecessary Hardship
"In order to obtain a use variance, a landowner must demonstrate that as a *825 result of enforcement of the zoning ordinance, his property will suffer unique or peculiar hardships not common to other property in the same zoning district." Brock v. Board of Zoning Adjustment of the City of Huntsville, 571 So.2d 1183, 1184 (Ala.Civ. App.1990). A variance may be granted "where, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, provided that the variance will not be contrary to public interest and the spirit of the ordinance will be observed and substantial justice done." Lawless v. Smith, 481 So.2d 1144, 1146 (Ala.Civ. App.1985); Ala.Code 1975, § 11-52-80(d)(3).
"An `unnecessary hardship' sufficient to support a variance exists where a zoning ordinance, when applied to the property in the setting of its environment, is `so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property.' McQuillin, [Municipal Corporations], at § 25.167 [3d ed.1983]....
"`No one factor determines the question of what is practical difficulty or unnecessary hardship, but all relevant factors, when taken together, must indicate that the plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone.'"
Ex parte Chapman, 485 So.2d 1161, 1162 (Ala.1986)(quoting City of Mobile v. Sorrell, 271 Ala. 468, 471, 124 So.2d 463, 465 (1960)). Use variances are to be sparingly granted. Ex parte Chapman, 485 So.2d at 1162. "A mere hardship or inconvenience is not enough to justify a variance." Id. at 1162-63. "Moreover, the reasons for granting a variance must be `substantial, serious, and compelling.'" Id.
The joint venture claims that the zoning ordinance in question causes an unnecessary hardship in regard to this property, for several reasons, and that the joint venture is, therefore, entitled to a variance. First, the joint venture argues, the property is a corner lot with very little yard space and is subject to stacked-up traffic and noise, making it undesirable as residential property. Second, the joint venture observes, the lot is smaller than neighboring residential lots and, unlike those other lots, has no access to a rear alleyway for ingress and egress. Vehicles leaving the property must back out onto Dauphin Street, a busy thoroughfare, and that fact, the joint venture maintains, makes the lot less marketable as residential property. Third, the joint venture points out, the property is close to commercial establishments on Upham Street that have been the site of crimes in recent years. Finally, the joint venture insists, if the property remains residential, it will likely become rental property with a high turnover of tenants and producing insufficient rental income to justify adequate maintenance of the premises. Thus, the joint venture argues, the property will fall into a state of perpetual disrepair and will become a neighborhood eyesore. The joint venture claims, however, that if the accounting firm is allowed to use the property as a satellite office, the firm will maintain the property and it will be an asset to the neighborhood.
The joint venture's claim that it is entitled to a use variance hinges primarily upon the argument that the property will decline in utility and marketability if it remains residential, whereas if it becomes the site of a business office it will achieve its highest and "best use." That argument appears to be based on statements of this court in Mareno v. Board of Adjustment of the City of Mobile, 495 So.2d 1109 (Ala.Civ.App. 1985), cert. denied, 495 So.2d 1112 (Ala.1986), and Board of Adjustment of the City of Mobile v. Sigler, 518 So.2d 725 (Ala.Civ.App. 1987). In Mareno and Sigler, this court stated that "[t]he evidence established that the best use of the property was for business offices." 495 So.2d at 1111, 518 So.2d at 727 (emphasis added). While evidence of "best use" is pivotal in a condemnation case, see State v. Boone, 276 Ala. 16, 158 So.2d 658 (1963), and highly relevant in a rezoning case, see Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1969), it is entitled to little or no weight in a variance case. See, e.g., Laney v. Early, 292 Ala. 227, 292 So.2d 103 (1974); Priest v. Griffin, 284 Ala. 97, 222 So.2d 353 *826 (1969); Brock v. Board of Zoning Adjustment of the City of Huntsville, 571 So.2d 1183 (Ala.Civ.App.1990).
In Laney v. Early, property owners sought removal of the restrictive covenant that prevented commercial development of their lots in a residential subdivision. They argued that Interstate Highway 59 had bisected their subdivision and had caused the neighborhood to lose its identity as a restricted residential area. They contended that the restrictions had made their property "practically worthless," and they insisted that their property "should be put to its highest and best use, which is commercial, so as to enable [them] to realize its greatest value." 292 Ala. at 232, 292 So.2d at 108 (emphasis added). Our supreme court stated that "`evidence of the comparative value of [the lots] for business and residential purposes ... [should be] given no weight.'" Id. The court held that "whether it be a zoning ordinance or [a] restrictive covenant involved, the same principle of law pertains," namely that "`financial loss is not the test.'" Id. (emphasis added).
This court and the Alabama Supreme Court have repeatedly held that neither depreciated value nor financial loss is determinative in a variance case. Responding to an argument made in Brock v. Board of Zoning Adjustment, 571 So.2d at 1184, that "[t]he developers' property, because of the fact that it is located at a heavily travelled intersection, may have less value than some of the other lots in the area for residential use," this court, citing a case from our supreme court, stated:
"[T]hat is a matter which would more properly support a complaint before the city authorities in opposition to the zoning of the area rather than a request for a use variance....
"It does not appear from the record that the subject area is unfit for a conforming use, although such use may not be as inviting and the lots as desirable as some other lots in the use district. However, such depreciated value does not fall with the class of peculiar and exceptional circumstances necessary to sustain the granting of a use variance. If so, other property owners desiring to sell their property in a use zone at a premium for nonconforming purposes would frequently seek use variances, the granting of which would tend to destroy or greatly impair the whole system of zoning."
Brock, 571 So.2d at 1185 (citing Priest v. Griffin, 284 Ala. 97, 102, 222 So.2d 353, 357)(emphasis added). See also Behm v. Board of Zoning Adjustment of the City of Mobile, 571 So.2d 315, 316 (Ala.Civ.App. 1990).
Here, as in Brock and Priest, it does not appear that the property is "unfit for a conforming use." On the contrary, the undisputed evidence established that the house on the premises had been used as residence for 20 years or more. Furthermore, there was no evidence that the property had failed to sell as a residence. In fact, the property had been on the market only a short time before the joint venture purchased it. Compare Board of Adjustment of the City of Mobile v. Murphy, 591 So.2d 505, 506 (Ala.Civ.App.1991)(evidence established that lot on the corner of Dauphin and Julia Streets in Mobile had been on the market 30 years and had no market value for residential purposes); Board of Adjustment of the City of Mobile v. Sigler, 518 So.2d 725, 727 (Ala.Civ.App.1987)(evidence established that "the house failed to sell as a residence after four years on the market").
At trial, the evidence did establish that, because the property is situated on the corner of Dauphin and Upham Streets, it is not as desirable as a single family residence (and more particularly, it is not as desirable as a residence for a family with children) as other properties on Dauphin Street further west of Upham Street. The evidence did not, however, establish that the property was unfit for residential purposes.
The circuit court's imposition of certain conditions on the grant of the variance (conditions obviously designed to ensure that the residential character of the property would survive despite its business use) was a commendable attempt to satisfy all competing interests at stake. The imposition of the conditions, however, does not cure the error of granting the variance. If the party seeking *827 a variance does not satisfy the "unnecessary hardship" standard, no subsequent conditions can undo the error of granting the variance.
"[T]he spirit of the zoning ordinance in harmony with the spirit of the law should be carefully preserved, to the end that the structure of a zoning ordinance would not disintegrate and fall apart by constant erosion at the hands of a board of zoning adjustment or the courts."
Priest, 284 Ala. at 102, 222 So.2d at 357-58.
After thoroughly reviewing the record, we conclude that the circuit court incorrectly applied the law of unnecessary hardship to the facts before it. It is apparent to this court that the Board's denial of the variance was based upon the following factors that the circuit court either ignored or found not significant enough to justify denying the variance: (1) Upham Street is a boundary between residences to the west and business and commercial uses to the east, on Dauphin Street; (2) although the property in question may not be as inviting or as desirable for residential purposes as other properties on Dauphin Street west of Upham Street, it is not unfit for residential purposes; (3) if a use variance is granted for the first lot on the first block west of Upham Street, then the continued existence of the residential character of the rest of the block is threatened.
Nearly 50 years ago, in another case involving a requested variance for a business use on Dauphin Street in Mobile, our supreme court concluded:
"There must somewhere be a line drawn, and evidently the [municipal zoning authorities] were impressed with the thought that this further encroachment by business upon this residential area would in the end result in the abandonment of the block for such a purpose. And it is evident that in their opinion this would not be a proper step to take."
Marshall v. City of Mobile, 250 Ala. 646, 650, 35 So.2d 553, 556 (1948)(affirming the denial of a variance to erect a store on a lot zoned for residential use at the corner of Dauphin and Pine Streets).
The judgment of the circuit court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
THIGPEN, J., dissents.
THIGPEN, Judge, dissenting.
I disagree that this case is due to be reversed and remanded to the trial court. "Whether a variance should be granted depends on the facts of each case." Arant v. Board of Adjustment, 271 Ala. 600, 606, 126 So.2d 100, 105 (1960). Based on the particular facts of this case, the trial court determined that an unnecessary hardship would accrue to the owners of the lot in question if a variance were not granted to them. Because I agree with that determination, I would affirm the trial court's judgment. See Mareno v. Board of Adjustment of the City of Mobile, 495 So.2d 1109 (Ala.Civ.App.1985), cert. denied, 495 So.2d 1112 (Ala.1986).